THERESA R. DAVIS, Administratrix of Estate of SIMON D. ROSSI, Appellant, v. VICTOR D. ROSSI and MAE R. HASEMAN.—34 S. W. (2d) 8.

Division Two, December 20, 1930.*

*NOTE: Opinion filed October 13, 1930: Motion for rehearing filed; motion overruled December 20, 1930.

912

*Randolph Laughlin* for appellant.

914

918

*Lubke & Lubke* and *Foristel, Mudd, Blair & Habenicht* for respondents.

HENWOOD, C.—Simon D. Rossi died, intestate, December 6, 1925, and was survived by his wife, ten children, and a grandson, the only child of a deceased daughter. This controversy originated in the Probate Court of the City of St. Louis as a proceeding to discover assets of his estate, wherein one of his children, Theresa R. Davis, as

administratrix of his estate, was the plaintiff, and two of his other children, Victor D. Rossi and Mae R. Haseman, were the defendants. In an affidavit of the administratrix, defendants were charged with concealing and withholding all moneys, goods and chattels owned by their father at the time of his death, particularly 120 shares of the capital stock of S. D. Rossi Grocery Company, a corporation, of the par value of $12,000, and the income derived therefrom, and 4,000 shares of the capital stock of S. D. Rossi, Incorporated, of the par value of $400,000, and the income derived therefrom. Defendants appeared in response to a citation and denied said charge, and thereafter filed their answers to interrogatories. In said answers they admit possession of all of said shares of the capital stock of said companies and certain income derived therefrom, and state that they hold the same as trustees under and by virtue of a certain deed of trust executed January 10, 1922, and further state that said 120 shares of the capital stock of S. D. Rossi Grocery Company were assigned to them on November 5, 1925, as trustees, under the terms of said deed of trust. A copy of said deed of trust and copies of the certificates covering the 120 shares of the capital stock of S. D. Rossi Grocery Company, with all indorsements thereon, were attached to said answers. In her reply to said answers, the administratrix denies the execution and delivery of the alleged deed of trust; further replying, she says that the alleged deed of trust is void for the reasons, first, that it violates the rule against perpetuities; second, that it is testamentary in character; and third, that Simon D. Rossi did not, at any time, divest himself of the possession or control of the corpus of the alleged trust nor of the income derived therefrom; and further replying, she denies that said 120 shares of the capital stock of S. D. Rossi Grocery Company were ever delivered or assigned to defendants as trustees under the terms of the alleged deed of trust, or for any other purpose. The probate court, sitting without a jury, found the issues for the administratrix, and, by its judgment, ordered that all of said shares of the capital stock of said companies and all income derived therefrom be turned over to the administratrix. Defendants appealed to the Circuit Court of the City of St. Louis, and that court, sitting without a jury, found the issues for defendants and rendered judgment accordingly. From that judgment, the administratrix has perfected an appeal to this court.

The deed of trust in question reads as follows:

"This Conveyance in Trust, Made and entered into this tenth day of January, 1922, by and between Simon D. Rossi, of the City of St. Louis and State of Missouri, party of the first part, and Victor D. Rossi and Mae R. Hasemann, of the same place, parties of the second part, and Madeline Rossi, Mae R. Hasemann, James F. Rossi, Victor D. Rossi, Theresa R. Davis, Sofia R. Peters, John

B. Rossi, Clara R. Dallavalle, Aline Rossi, Harvey J. Rossi, Stanley A. Rossi and Harold G. Johnson, of the same place, parties of the third part, witnesseth:

"That said party of the first part, for and in consideration of the love and affection he bears to the parties of the third part, as well as the sum of one dollar by each of the parties of the third part paid to the party of the first part, the receipt of which is hereby acknowledged, and of the further consideration of the trusts hereinafter mentioned and created, does hereby sell, assign, transfer and set over unto said parties of the second part, the following described personal property, which said personal property at the date of these presents is owned by said party of the first part, and which said personal property is, at the delivery of these presents, delivered by said party of the first part to said parties of the second part, and the parties of the second part hereby acknowledge receipt of the same from the party of the first part, namely:

"Four thousand shares of the capital stock of S. D. Rossi, Incorporated, a corporation under the laws of the State of Missouri, of the par value of one hundred dollars each, evidenced by its certificate No. 1, for 3,998 shares in the name of S. D. Rossi; No. 2, for one share in the name of Victor D. Rossi, and indorsed by him in blank; and No. 3, in the name of Mae R. Hasemann, for one share, and indorsed by her in blank.

"To have and to hold said property, together with any property acquired with the income thereof, together with any other property which may be hereafter added thereto, as hereinafter provided, unto said parties of the second part and their successors and assigns forever; in trust, however, for the following uses and purposes, and with the following powers and subject to the following reservations by the party of the first part, and the following limitations:

"Said parties of the second part shall hold said property, together with any which may be added thereto, as hereinafter provided, and collect the income therefrom, and to invest the income unexpended or accumulating therefrom, and shall have the power to sell or dispose of any or all property acquired with the income of the same from time to time, except as hereinafter provided, so as to keep such income unexpended and accumulating constantly invested, so as to bear an income, and shall constantly keep said property invested in such securities as in their judgment from time to time shall be safest and best, so as to bring the highest rate of income consistent with safety of investment, and shall invest the same from time to time only in such securities as shall be accepted by banks doing business in the city of St. Louis, Missouri, as collateral for loans to be made by them.

"Said parties of the second part shall not sell or cause to be sold or transferred, or cause to be transferred on the books of said S.

D. Rossi, Incorporated, the shares of stock of said S. D. Rossi, Incorporated, hereby conveyed and assigned, during the lifetime of the party of the first part, without the written consent of the party of the first part, and shall permit the party of the first part to vote said shares of stock, or to direct the voting of said shares of stock at all meetings of the stockholders of said corporation, in such manner as he may see fit, and shall permit the party of the first part to hold such offices, in said corporation as he shall desire to hold, so long as the party of the first part shall be living, or until said shares shall be transferred with his written consent. After the death of the party of the first part said shares shall be transferred on the books of said S. D. Rossi, Incorporated, to the parties of the second part, with the exception of one share, which the parties of the second part may cause to be transferred on the books of said S. D. Rossi, Incorporated, to a third person to hold for the parties of the second part in order that said corporation may have at least three stockholders. And the party of the first part hereby agrees to endorse and deliver to the parties of the second part all dividend checks received by him from time to time from said corporation in payment of dividends declared on said shares.

"Out of the income from said property said parties of the second part shall first pay all taxes of every kind which may be assessed against said property or the income therefrom and any necessary expenses of administering the trusts hereby created, including reasonable compensation to the parties of the second part for their services, which shall be five (5) percentum of all disbursements made by them, and the net income remaining after the payment of such taxes and necessary expenses of administration the parties of the second part shall pay over to the party of the first part for and during his natural life from time to time, at least once each three months, so long as the party of the first part shall be capable of managing his own affairs, and, if the party of the first part shall become incapable of managing his own affairs, then the parties of the second part may use said income, in whole or in part, for the support and maintenance of the party of the first part and his immediate family then residing with him, and incur liability therefor, and pay for the same to the persons furnishing the same out of said income.

"Upon the death of the party of the first part, the parties of the second part shall, out of said income, pay the expenses of the funeral of the party of the first part. Within one year after the death of the party of the first part, the parties of the second part shall also erect a monument to the party of the first part upon his family lot in the Calvary Cemetery of said city of St. Louis, at a cost of not less than one thousand dollars ($1,000.00) and

shall pay the following sums to the following charities, religious or educational organizations in said city of St. Louis, namely:

"St. Charles Borromeo Italian Church, one thousand dollars ($1,000.00); St. Charles Borromeo Italian School, five hundred dollars ($500.00); St. Charles Borromeo Italian Orphans Asylum, one thousand dollars ($1,000.00); St. Mary's Infirmary, five hundred dollars ($500.00); St. Vincent de Paul Society, five hundred dollars ($500.00); St. Louis Provident Association, five hundred dollars ($500.00); the Little Sisters of the Poor, four hundred dollars ($400.00), and the House of the Good Shepherd, two hundred dollars ($200.00); Mount St. Rose Sanitarium, two hundred dollars ($200.00), and All Saints Roman Catholic Church, two hundred dollars ($200.00); and to the St. Bernard's Church of Cassamarion, Italy, two hundred dollars ($200.00), all of which sums the parties of the second part shall pay out of said income of said property.

"After the death of the party of the first part, the parties of the second part shall out of said net income pay to the party of the third part, Madeline Rossi, for and during her natural life, not less than the sum of two hundred and fifty dollars ($250.00) each month.

"At the request of the said Madeline Rossi at any time after the death of the party of the first part, the parties of the second part are hereby authorized and directed to pay to her not exceeding fifteen thousand dollars in one sum out of said net income, and in the event said net income shall not be sufficient to pay said sum or part thereof, said parties of the second part shall have, and are hereby granted, the power to borrow whatever sum shall be required to pay said amount to said Madeline Rossi, and to pledge as security for the loan a part of the shares of said S. D. Rossi, Incorporated, sold and assigned to them hereby, but any loan so obtained by the parties of the second part shall be discharged as soon as possible out of the said net income remaining after the payment of the sums of two hundred and fifty dollars per month directed hereby to be made monthly to said Madeline Rossi, and the payment of the other sums hereinbefore directed to be paid has been made.

"The party of the first part also hereby directs said parties of the second part that, in the management of the affairs of said S. D. Rossi, Incorporated, after his death, only so much of the net income of said corporation as shall be required to make the payments to said Madeline Rossi, and the other payments hereinbefore directed to be made, shall be set apart as dividends, and that the remainder of the net income of said corporation be accumulated from time to time to provide a sinking fund with which to pay off the indebtedness which is now secured by deed of trust against part of the property owned by said corporation and to make im-

provements on the property of the corporation situated on the north side of Delmar Boulevard, opposite Skinker Road, in said city. After said indebtedness secured by deed of trust shall have been paid, said parties of the second part shall, in the management of said corporation, cause five thousand dollars ($5,000.00) per annum of the net income of said corporation to be set aside for the purpose of improving with suitable buildings said property on the north side of Delmar Boulevard and paying for such improvements, and the remainder of the net income of said corporation shall be distributed as dividends, out of which, when the same shall be received by the parties of the second part, they shall pay said Madeline Rossi the sums hereinbefore directed to be paid to her, and the balance remaining after such payments they shall pay to the parties of the third part other than said Madeline Rossi, as hereinafter provided. Should the term for which said corporation was incorporated terminate before the termination of the trusts herein created, said parties of the second part shall either extend the corporate existence of said corporation or form a new corporation to take over the property of said corporation, which new corporation shall be conducted in the same manner as said S. D. Rossi, Incorporated, was conducted by the parties of the second part.

"After the death of said Madeline Rossi said parties of the second part, or their successors, shall, until the death of the last survivor of the parties of the third part, pay over to the remaining parties of the third part said net income in equal parts, share and share alike, at least once each quarter, and should any of said parties of the third part die, either before or after the death of said Madeline Rossi, leaving surviving him or her a child or children, or other descendants, then said parties of the second part or their successors shall pay to the child or children or descendants of such party of the third part, who is no longer living, the share of such income their parent would have received were he or she still living, or expend or use the same for the support, maintenance or education of such child or children or descendants, and in the event any of the parties of the third part die, either before or after the death of said Madeline Rossi leaving surviving him or her no children, or descendants, but shall leave surviving a husband or wife with whom said party of the third part so dying shall have been actually living at the time of his or her death, then, upon the death of such party of the third part, said parties of the second part shall pay to such surviving husband or wife of such deceased party of the third part for and during his or her life, and so long as he or she shall remain unmarried, one-half of the share of said net income of said deceased party of the third part would have been entitled to had said party of the third part not died, and the remainder of the share of such deceased party of the third part in such in-

come shall be paid to the other parties of the third part or their children or descendants in equal parts, the children or descendants of any deceased party of the third part together taking the share of their parent in such part of said income.

"After the death of the last survivor of said parties of the third part, said parties of the second part or their successors, shall assign, transfer and convey all of the property and money then in their hands to the male children or descendants of the parties of the third part, Victor D. Rossi and Harvey J. Rossi, then living, in equal parts *per stirpes*.

"In using the words 'descendants' or 'child' or 'children' in this instrument, only children or descendants of children natural born are intended.

"Said income to be paid or applied by the parties of the second part for the benefit of the parties of the third part, or their children respectively, shall not be due or payable until such periods or times as shall be determined by the parties of the second part, and when so due and payable, shall be paid over to and received by the parties of the third part free and clear of any and all claims on the part of the creditors of the parties of the third part, or their children, respectively, and said parties of the third part, or their said children, at no time shall have the right or power to anticipate, pledge, assign or transfer said income to be paid to them, respectively, or used for their support or maintenance, nor shall the parties of the third part or their children, respectively, have the right or power to pledge, assign, sell, transfer, or in any manner dispose of any interest they, or any of them, may acquire in said property prior to the time the same shall be assigned, conveyed and delivered to them by the parties of the second part, or their successors.

"Should any of the parties of the third part, or anyone for them, or any of them, institute any action or proceedings of any kind in any court at any time for the purpose of setting aside this instrument, on any ground whatsoever, and be unsuccessful therein, then and in such event said parties of the second part shall pay to each party of the third part instituting such proceeding or directing or assisting in the institution or prosecution of such proceeding, the sum of one dollar, and all further interest of such party or parties of the third part, or his children and descendants in the property conveyed hereby, and the income thereof, shall cease and in the distribution of the income from said property and the property itself, such party or parties of the third part and his or her children shall not share further, and the share of such party or parties of the third part and their children and descendants shall be paid, assigned, transferred and conveyed by the parties of the second part to the other parties of the third part, excepting said Madeline Rossi, or their children and descendants, in equal parts share and share, as and

when distribution of the portion of said income and property to be paid or distributed to them respectively shall be paid and distributed.

"Said party of the first part also shall have the right to add to the property hereby conveyed other property from time to time if he shall see fit to do so, and upon the delivery and conveyance of said property to the parties of the second part by the party of the first part, the parties of the second part shall hold the same under the same conditions and with the same powers and trusts as are declared herein with reference to the property conveyed hereby, but the fact that additional property shall have been delivered and conveyed to the parties of the second part shall be noted by an addition to this instrument made at the time of said delivery and conveyance. The party of the first part also reserves and shall have the right to any time hereafter by instrument in writing duly executed and delivered by him to the parties of the second part, change the manner, time and amounts of the payments of both income and principal to be made by the parties of the second part hereunder.

"In the event that either of the parties of the second part shall die or decline in writing to further carry out the trusts herein and hereby created, before said trust shall be fully executed, the survivor or remaining trustee may designate by a writing to be executed, acknowledged and attached hereto, a successor to the trustee or trustees so dying or declining to act in the trusts aforesaid, and said successor or successors so designated shall have all the powers and powers and rights of the trustees or trustee so dying or declining to act, including the right to appoint a successor upon the death or refusal to act further on the part of any of his cotrustees.

"In witness whereof, said party of the first part has hereunto set his hand the day and year first above written, and the parties of the second part also hereto set their hands hereto, indicating their acceptance of the trusts created hereby and their willingness to execute the same on the terms herein set out.

"S. D. ROSSI,
"V. D. ROSSI,
"MAE R. HASEMAN,
Trustees."

At the hearing in the circuit court the administratrix testified: She is the daughter of Simon D. Rossi, who died in St. Louis on December 6, 1925, and of Madeline Rossi, who is still living. Her father left four other daughters, Mae Haseman, Clara Dallavalle, Aline Salveggi and Sofia Peters, and five sons, Victor, John, James, Harvey and Stanley, and a grandson, Harold Johnson, whose parents are dead. She lived in California for about eleven years prior to her father's death, but moved back to St. Louis "as a resident" in July, 1926. She identified defendants' exhibits C, D, E, F and

G as statements of account received by her from defendants. She received two checks from defendants in connection with two of said statements of account, but returned the checks to defendants. In explaining why she returned the checks she said: "Well, I dispute that instrument. The copy I received and the instrument that was read to me twenty days after my father died are not the same instrument."

By agreement of the parties the administratrix put in evidence the following testimony of Victor D. Rossi, given at the hearing in the probate court:

"My name is Victor D. Rossi. I live at 7700 Clayton Road. I am in the coffee business. I am a son of S. D. Rossi, who died last December. I was and am secretary of the S. D. Rossi Grocery Company. As a trustee I have in my possession 120 shares of stock of the S. D. Rossi Grocery Company, owned by S. D. Rossi in his lifetime. I hold that as a trustee, along with my sister, Mrs. Haseman. My sister and I hold that stock jointly as trustees, and not in our own individual right. Those shares of stock came into our possession on November 5, 1925. I received them from my father. The shares of stock at that time stood in his name. As secretary of the S. D. Rossi Grocery Company I have in my possession the minute book and books of account of that company. That company is not now engaged in business. It ceased to transact business on June 7, 1926. The greater part, but not all, of its assets were disposed of at that time. They were sold to L. Cohen Grocery Company. We have the proceeds in the bank. The unsold assets of that corporation are a stock of can goods. We have got can goods and money and accounts on the books. We sold the greater part of the can goods. We still have some. I was familiar with the corporation known as the S. D. Rossi, Incorporated. I am now the president of that company. Prior to becoming president I was secretary. In his lifetime S. D. Rossi owned all of the shares of stock of that corporation outside of two shares. The capitalization of that corporation was $400,000. Its assets consisted of real estate. Jointly with my sister, Mrs. Haseman, I have possession of the 4,000 shares of S. D. Rossi, Inc. I transferred them right after my father's death. We do not make any claim to these shares of stock individually or personally. We claim possession of these shares of stock as trustees. There was an instrument in writing creating this trust of which I claim to be a trustee. I was familiar with the preparation and execution of that instrument. It was executed in January, 1922. We have the original instrument in our possession. I haven't it with me. There were two originals made. One was given to the trustees and the other S. D. Rossi kept himself. Outside of these duplicates of the same instrument, S. D. Rossi never executed any other instrument, to my knowledge.

No dividends were earned or collected by S. D. Rossi, Inc., for 1922, 1923, 1924 or 1925. The income or profits from the real estate held by S. D. Rossi, Inc., during those years was paid to my father as salary. He received as salary around $25,000. It was paid yearly. The property included in the corpus of the trust that I now claim exists is located at Fifteenth and Market, at Taylor and Delmar, at Kingshighway and Delmar and at Skinker Road and Delmar. The trust estate owns no other property, real or personal. The personal checking account of S. D. Rossi in his lifetime ceased when he incorporated. When he received this annual salary in a lump sum of $25,-000 he used it to pay off his obligations. He had a deed of trust on the property, which was finally paid off July 30, 1925. He had no safe deposit box at any time He had no household goods, only what was at home. He did not have any property in his own name and in his own right of any kind whatsoever at the time of his death. Mrs. Haseman and I did not collect any dividends or profits from the S. D. Rossi, Inc., or S. D. Rossi Grocery Company at any time during the lifetime of our father. All the profits of these corporations were paid directly to our father, S. D. Rossi, as salary.''

The administratrix also put in evidence various papers and documents relating to the citation proceeding in the probate court and various exhibits relating to her father's business affairs during the years 1922, 1923, 1924 and 1925, and to income received by defendants from the alleged trust estate after her father's death. Among these papers, documents and exhibits were the copies of eleven certificates (Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 17) covering the 120 shares of the capital stock of S. D. Rossi Grocery Company which defendants attached to their answers to interrogatories in the probate court. On the back of each of said certificates, as shown by said copies thereof, is the following indorsement: ·

''For value received, I hereby sell, assign and transfer unto Victor D. Rossi and Mae R. Haseman, trustees, all the shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint the vice-president to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated July 5, 1922.

.''S. D. Rossi,

''By V. D. Rossi, Agent.''

''In presence of

''Mae R. Haseman.

''Ten cents U. S. revenue stamp canceled.''

On the face of each of said certificates, as shown by said copies thereof, the following indorsement appears:

''Canceled and certificate No. 19 issued in lieu hereof January 16, 1926.

''V. D. Rossi, Secretary.''

According to the evidence adduced by defendants, Simon D. Rossi was about seventy years of age and in good health at the time of the execution of the deed of trust, on January 10, 1922, and continued to enjoy good health and to give his personal attention to the management of his business affairs until about November 26, 1925, or about ten days prior to his death. He had been successful in business and had accumulated several pieces of valuable real estate in the city of St. Louis. During the period of about two years prior to the execution of the deed of trust, he had numerous conferences with his attorney concerning the establishment of a trust estate for the benefit of his family. As the result of these conferences, the formation of S. D. Rossi, Incorporated, was effected in August, 1921. The first meeting of the stockholders was held on August 10, 1921. At that meeting Simon D. Rossi, his daughter, Mae R. Haseman, and his son, Victor D. Rossi, were elected as directors of the company, and Simon D. Rossi was elected president and treasurer, Mae R. Haseman was elected vice-president and Victor D. Rossi was elected secretary of the company. They continued to hold these offices, respectively, until Simon D. Rossi's death. The company was capitalized at $400,000, and its assets consisted entirely of real estate conveyed to it by Simon D. Rossi. The capital stock was divided into 4,000 shares of the par value of $100 each. It was resolved that the corporation begin business on January 1, 1922, and the president and secretary were authorized to issue certificates of stock to the stockholders of the company. At a meeting of the board of directors on January 10, 1922, it was reported that the company had begun business on the first day of that year. On the same day, January 10, 1922, Simon D. Rossi, Mae R. Haseman and Victor D. Rossi went to the office of Simon D. Rossi's attorney, where duplicate copies of the deed of trust were executed by Simon D. Rossi, as settlor, and by Victor D. Rossi and Mae R. Haseman, as trustees. A certificate covering 3,998 shares of the capital stock of S. D. Rossi, Incorporated, issued in the name of Simon D. Rossi, and then in his possession, was indorsed by him; that is, he signed his name to the transfer blank on the back of said certificate. A certificate covering one share of the capital stock of said company, issued in the name of Victor D. Rossi, was indorsed by him in the same way, and a certificate covering one share of the capital stock of said company, issued in the name of Mae R. Haseman, was indorsed by her in the same way. Simon D. Rossi then delivered one copy of the deed of trust and the three certificates mentioned to Victor D. Rossi and Mae R. Haseman, and they accepted the deed of trust and said certificates as trustees under the terms of the deed of trust, and have held the deed of trust and said certificates as such trustees ever since. Simon D. Rossi's salary as president and treasurer of the company was fixed at $14,400 for 1922; at $20,000

for 1923; at $25,000 for 1924, and at $25,000 for 1925. Out of this total of $84,400 received by him as salary during the four years mentioned he paid $65,313.14 in liquidating indebtedness of the company, the same being in the form of a note secured by a deed of trust covering the company's real estate. He performed the duties of president and treasurer of the company. During his lifetime, no books of account were kept by the company, "such as cash received and moneys paid out. He didn't keep anything except his stub book and his bank deposit book. That is what he went by. It was handled in the way he saw fit. He alone signed the checks of the company." The checks were signed "S. D. Rossi, Incorporated, by S. D. Rossi, President." He drew no money from the company's treasury except his salary. The net income of the company was put into its surplus fund. A written statement (Plaintiff's Exhibit I) made by Victor D. Rossi shows that all sums of money paid by the company to his father, or for his benefit, "from March 15, 1922, to the end of 1925," represent the exact amount of his salary during the years 1922 to 1925, inclusive. From January 10, 1922, until their father's death, on December 6, 1925, Mae R. Haseman and Victor D. Rossi voted all of the shares of stock of the company at the annual elections of directors and officers of the company. They received no salary from the company during their father's lifetime. Shortly after the death of their father, the original certificates covering the 4,000 shares of the capital stock of S. D. Rossi, Incorporated, were canceled and new certificates were issued in the names of Victor D. Rossi and Mae R. Haseman, as trustees under the deed of trust. On January 16, 1926, Victor D. Rossi and Mae R. Haseman were elected directors of the company, and Victor D. Rossi was elected president and treasurer, and Mae R. Haseman was elected secretary of the company. The salary of each was fixed at $3,500 per year. Not long thereafter the secretary of the company reported one share of stock transferred to Madeline Rossi, and she was thereupon elected as a director and vice-president of the company. On May 11, 1927, her salary was fixed at $350 per month, beginning May 1st of that year. The business of the company was continued under the management of Victor D. Rossi, Mae R. Haseman and Madeline Rossi as its officers and directors. Out of the net income of the company, payments were made to Madeline Rossi, as provided for in the deed of trust, and out of the balance of the net income of the company dividends were declared, from time to time, and paid to eleven of the twelve beneficiaries of the trust estate, Theresa R. Davis, the administratrix, having refused to accept her share of said dividends. Defendants put in evidence various statements of account (Exhibits C, D, E, F and G), showing receipts and disbursements of S. D. Rossi, Incorporated, and S. D. Rossi Grocery Company, from December

1, 1925, to March 31, 1927, and the minute book of S. D: Rossi, Incorporated (Exhibit H:), showing the minutes of stockholders' and directors' meetings of the company from August 10, 1921, to May 11, 1927, and copies of the original certificates covering the 4,000 shares of the capital stock of S. D. Rossi, Incorporated (Exhibits 3, 4 and 5). The copies of said certificates appear in appellants' abstract of the record in the following abbreviated form:

"Exhibit 3.      Certificate No. 1.
"3998 Shares.      S. D. Rossi, Inc.
"Capital Stock, $400,000.00
"This certifies that S. D. Rossi is the owner of Thirty-nine hundred and niney-eight (3998) shares of the capital stock of S. D. Rossi, Incorporated, full· paid, transferable only on the books of this corporation in person or by attorney upon surrender of this certificate properly endorsed." Signed by Victor D. Rossi, Secretary, and S. D. Rossi, president.·

Transfer blank on back, signed by S. D. Rossi.
Exhibit 4.      Certificate No. 2.
1 Share in the name of Victor D. Rossi. Form same as Exhibit 3. Transfer blank endorsed by V. D. Rossi.
Exhibit 5.      Certificate No. 3.
1 Share in the name of Mae R. Haseman. Form the same as Exhibit 3. Transfer blank endorsed by Mae R. Haseman.

Other pertinent evidence will be noted in connection with our discussion of the appellate issues.

Both sides requested findings of fact, and the administratrix requested declarations of· law. The following findings of fact were requested by defendants and filed by the circuit court as its findings:

"That Simon D. Rossi died intestate in the city of St. Louis, Missouri, on the 6th day of December, 1925, and that in September, 1926, the plaintiff, Teresa R. Davis, was appointed administratrix of the estate of said Simon D. Rossi, deceased, by the Probate Court of the City of St. Louis.

"That in the month of August, 1921, said S. D. Rossi organized a corporation known as S. D. Rossi, Incorporated, with a capital stock of $400,000, divided into 4,000 shares of the par value of $100 each; that after this corporation was organized, at a meeting of its stockholders, held on August 10, 1921, by-laws for the government of the corporation were adopted, providing for the officers of the corporation and fixing their duties, and authorizing the board of directors to fix the salaries to be paid to the officers, respectively; that on August 10, 1921, at a meeting of the directors of the corporation, said Simon D. Rossi was elected its president and treasurer, the defendant Mae R. Haseman, its vice-president, and the defendant Victor D. Rossi its secretary, and a resolution was passed that the company· begin business on January 1, 1922.

"That on January 10, 1922, at a meeting of the directors of the company, the salary of said Simon D. Rossi, as president and treasurer, and for all services he might render to the company, was fixed at $1,200 per month, payable at such times and in such amounts as might be required by him, beginning with the first day of January, 1922; that thereafter, at the annual meeting of the corporation held in January of the years 1923, 1924 and 1925, the same board of directors, consisting of Simon D. Rossi, Victor D. Rossi and Mae R. Haseman, was elected, and that this board of directors re-elected these same officers, and that at the meeting of the directors in 1923 the salary of Simon D. Rossi was fixed at $20,000 for the year 1923, and at the meetings of 1924 and 1925 the salary of said Simon D. Rossi was fixed at $25,000 per annum.

"That on January 10, 1922, certificates of stock were issued by said corporation as follows: No. 1 for 3,998 shares to Simon D. Rossi, No. 2 for one share to Victor D. Rossi, and No. 3 for one share to Mae R. Haseman; that said certificates issued to Victor D. Rossi and Mae R. Haseman were immediately endorsed in blank by them, respectively, and delivered to said Simon D. Rossi; that on said January 10, 1922, said Simon D. Rossi executed a conveyance in trust dated the 10th day of January, 1922, in duplicate, being the instrument offered in evidence in this cause, and also endorsed in blank said certificate for 3,998 shares of S. D. Rossi, Incorporated; that on said day, immediately after said Simon D. Rossi had executed said conveyance in trust, said Victor D. Rossi and Mae R. Haseman also executed the same, and that after they executed the same said. Simon D. Rossi delivered to said Victor D. Rossi and to Mae R. Haseman one copy of said conveyance in trust, together with said certificates of stock of the S. D. Rossi, Incorporated, No. 1 for 3,998 shares in the name of S. D. Rossi, endorsed in blank by S. D. Rossi; No. 2 for one share in the name of Victor D. Rossi, and endorsed in blank by Victor D. Rossi, and No. 3 for one share, in the name of Mae R. Haseman and endorsed by her in blank, and retained for himself the other copy of said trust conveyance; that from the time said copy of said trust conveyance and said certificates of stock were delivered by said Simon D. Rossi to said Victor D. Rossi and Mae R. Haseman, said Victor D. Rossi and Mae R. Haseman had and still have possession of the same, and have claimed to own said shares of stock as trustees under said trust conveyance, and subject to the terms thereof.

"That on November 4, 1925, said Simon D. Rossi delivered to said Victor D. Rossi the certificate for 120 shares of the stock of the S. D. Rossi Grocery Company of the par value of $100 each, full paid, in his name, and directed him to endorse the same for him and in his name and deliver the same to said Victor D. Rossi and Mae R. Haseman, as trustees, to be added to said shares of

S. D. Rossi, Incorporated, under the terms of said conveyance in trust, and that on November 5, 1925, said Victor D. Rossi endorsed said certificates in blank for said S. D. Rossi and in his name and delivered the same to said Victor D. Rossi and Mae R. Haseman, and that since said time they have held and still hold the same as trustees under said trust conveyance and subject to the terms thereof.

"That the consideration for said trust conveyance was the love and affection said Simon D. Rossi bore for his wife and children, named as beneficiaries therein, and the obligations assumed by the trustees named therein thereby.

"That at the time said Simon D. Rossi executed said trust conveyance and delivered the same with the certificates for the shares of stock referred to therein, he was in good health and actively engaged in the wholesale grocery business, as well as the management of the business of said S. D. Rossi, Incorporated; that said certificates for said shares of the S. D. Rossi Grocery Company were delivered by him to said Victor D. Rossi while he was in good health and prior to the injuries received by him about ten days before his death; that his death on the 6th day of December, 1925, was occasioned by pneumonia, resulting from injuries received by him from a fall in the yard surrounding his residence, about ten days prior to his death.

"That said S. D. Rossi, Incorporated, during the lifetime of said Simon D. Rossi, declared no dividends, but each year added something to a surplus account, begun in 1922, until at the end of 1925 said surplus amounted to $15,022.27; that after the death of said Simon D. Rossi said Victor D. Rossi and Mae R. Haseman, as trustees under said trust conveyance, received dividends from said S. D. Rossi, Incorporated, aggregating $68,000, and from said S. D. Rossi Grocery Company aggregating $18,000.

"That from August 10, 1921, to the date of his death, said Simon D. Rossi acted as director and president and treasurer of said S. D. Rossi, Incorporated; that the salary voted to him by the board of directors for his services as president and treasurer was drawn in part by him or paid out for his account as directed by him, either in cash or by checks drawn by him as president of the corporation."

The judgment rendered in accordance with said findings of fact is as follows:

"Now at this day comes again the plaintiff in person and by Messrs. Laughlin, Frumberg, Blodgett & Russell, her attorneys, and come also the defendants in person and by George W. Lubke, Jr., and Messrs. Foristel, Mudd, Blair & Habenicht, their attorneys, and this cause having been heretofore on the 9th day of June, 1927, submitted to the court, and the court having fully considered the

same and being now fully advised therein, doth find the issues herein joined in favor of the defendants, and doth further find that at the time of his death on the 6th day of December, 1925, Simon D. Rossi did not own and had no right, title or interest in and to 4,000 shares of the capital stock of S. D. Rossi, Incorporated, evidenced by its certificates dated January 10, 1922, No. 1 for 3,998 shares in the name of S. D. Rossi, No. 2 for one share in the name of Victor D. Rossi, and No. 3 for one share in the name of Mae R. Haseman, and that said Simon D. Rossi at the time of his death had no right, title or interest in and .did not own 120 shares of the capital stock of the S. D. Rossi Grocery Company evidenced by its certificates dated July 1, 1922, Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10, for 10 shares each, and No. 17 for 20 shares, and that said 4,000 shares of the capital stock of S. D. Rossi, Incorporated, and 120 shares of the capital stock of the S. D. Rossi Grocery Company were at the time of the death of said Simon D. Rossi the property of and owned by the defendants Victor D. Rossi and .Mae R. Haseman, as trustees under a conveyance in trust executed and delivered by said Simon D. Rossi on the 10th day of January, 1922, and that as said owners the defendants, as such trustees were and are entitled to all dividends declared on said shares, and that the plaintiff as the administratrix of the estate of said Simon D. Rossi, deceased, has no right, title or claim thereto or any part thereof.

"It is, therefore, adjudged by the court that the defendants, Victor D. Rossi and Mae R. Haseman, as trustees under a conveyance in trust executed and delivered by Simon D. Rossi, dated January 10, 1922, are the owners of said shares of stock and hold the same under and pursuant to the provisions in said conveyance in trust, and as such trustees are also entitled to all dividends declared on said shares, and that the plaintiff is not entitled to recover the same from the defendants and has no right, title or claim thereto or to any part thereof and that the costs herein be paid by the plaintiff and that this judgment be certified to the Probate Court of the City of St. Louis."

The administratrix challenges the validity of the deed of trust on the grounds, first, that it was not executed with the intention of creating a bona-fide trust, but for the purpose of evading the state inheritance tax and the statutes relating to wills and the administration of estates; second, that its terms and conditions and the acts of the parties in connection therewith do not meet the requirements of the law for the creation of a completely executed trust; third, that it is testamentary in character, and, fourth, that it violates the rule against perpetuities. And she further contends that there is a failure of proof of the alleged assignment of the 120 shares of the stock of S. D. Rossi Grocery Company.

I. This case having originated as an action at law, and having been tried as such in the probate court and in the circuit court, as above indicated, will be so considered by this court. [Secs. 62 to 66, R. S. 1919; Sexton v. Sexton, 295 Mo. 134, 243 S. W. 315; Clinton v. Clinton, 223 Mo. 371, 123 S. W. 1.]

II. The question of whether or not the deed of trust was executed with the intention of creating a bona-fide trust will be considered in connection with the question of whether or not a completely executed trust was created by that instrument and the acts of the parties in relation thereto.

The deed of trust names Simon D. Rossi as party of the first part, and Victor D. Rossi and Mae R. Haseman, two of his children, as parties of the second part, and Madeline Rossi, his wife, and his ten children, including Victor D. Rossi and Mae R. Haseman, and his grandson, Harold G. Johnson, as parties of the third part. It recites that the first party "does hereby sell, assign, transfer and set over unto said parties of the second part" certain personal property, namely, "four thousand shares of the capital stock of S. D. Rossi, Incorporated, To Have and To Hold, together with any property acquired with the income thereof, together with any property which may be added thereto, as hereinafter provided, In Trust," for certain uses and purposes, and with certain powers, and subject to certain reservations and limitations, which are thereinafter prescribed. It provides that the trustees shall collect and invest the income of the trust property; and have the power to dispose of any property acquired with said income; and pay taxes assessed against the trust property and necessary expenses of administering "the trusts hereby created;" and pay the "net income over to the party of the first part for and during his natural life;" and, upon his death, pay certain sums of money to certain religious, educational and charitable institutions, and make certain payments of money to his widow, out of the net income of the trust property; and, out of the remainder of said net income provide a sinking fund with which to pay off indebtedness secured by a deed of trust against the real estate of S. D. Rossi, Incorporated, and make improvements on certain pieces of said real estate; and distribute the balance of said net income, as dividends, to the parties of the third part other than his widow; and, after the death of his widow, pay the net income of the trust property to the remaining parties of the third part, share and share alike, "until the death of the last survivor of the parties of the third part;" and, in the event any of said parties of the third part die, either before or after the death of his widow, pay to the children

or other descendants of such party the share of said income that such party would receive if living; and, in the event any of said parties of the third part die, either before or after his widow, leaving a husband or wife with whom such party was actually living at the time of his or her death and leaving no, children or other descendants, pay to such surviving husband or wife, for and during his or her life, so long as he or she shall remain unmarried, one-half of the share of said income that such party of the third part would receive if living, and pay the other one-half of such party's share of said income to the other parties of the third part, or their children or descendants, in equal parts, the children or descendants of any deceased party of the third part "together" taking the share of their deceased parent in such part of said income; and, "after the death of the last survivor of said parties of the third part,'' convey all of the trust property to the male children or descendants of Victor D. Rossi and Harvey J. Rossi, then living, in equal parts *per stirpes*. It further provides that said income shall be due and payable to the parties of the third part or their children at such times as shall be determined by the trustees, and that said parties of the third part and their children shall not anticipate, pledge, assign, transfer, nor in any manner dispose of, any interest they may have in the trust property at any time before the same is assigned, conveyed or delivered to them. It further provides that the trustees shall not sell or transfer said shares of stock, nor cause the same to be transferred on the books of the corporation, during the lifetime of the first party, without his written consent; and shall permit him to vote or to direct the voting of said shares of stock at all meetings of the stockholders of the corporation and to hold such offices in the corporation as he may desire until said shares of stock shall be transferred with his written consent; and, after his death, said shares of stock shall be transferred on the books of the corporation to the trustees except one share, which shall be transferred to a third person to hold for the trustees, in order that the corporation may have three stockholders. In this connection the first party agrees to indorse and deliver to the trustees all dividend checks received by him from the corporation covering dividends on said shares of stock.

It further provides that the first party shall have the right, at any time, to add other property to the property therein conveyed; and that such additional property shall be held by the trustees under the same conditions as the property therein conveyed; and that the fact that additional property shall have been conveyed and delivered to the trustees shall be noted by an addition to "this instrument" at the time of such conveyance and delivery. And it further provides that the first party reserves the right to change the manner, time and amounts of the payments of both in-

come and principal to be made by the trustees "hereunder" by an instrument in writing duly executed and delivered to the trustees.

Manifestly it was the purpose of Simon D. Rossi to provide for the future comfort and happiness of his wife and children and grandson, and to protect them against misfortune, perhaps against their own improvidence and lack of business ability. His plan for the accomplishment of that purpose was adopted upon the advice of his attorney and after a thorough consideration of the matter on his part. We must assume that he intended to do what the deed of trust shows he attempted to do. If that instrument, together with what was done in connection with it, created a valid trust, then it should be carried out in favor of the beneficiaries. And, in our opinion, it clearly appears that he intended, at the time he executed the deed of trust, to establish a bona-fide trust, and that he and the trustees did everything that was necessary to establish a completed trust, with the legal title to the trust property vested in the trustees, and with equitable life estates in his children and grandson, Harold G. Johnson, in the net income of the trust property, and, upon the death of any of his children or his said grandson, until the death of the last survivor of such parties, their children or other descendants and their husbands or wives, under certain conditions, being entitled to certain parts of said income, subject to the right of Simon D. Rossi to receive the net income of the trust property during his life, and, after his death, subject to the payment of certain sums of money to his widow during her life, and to the payment of certain sums of money to certain religious, educational and charitable institutions, and to the payment of certain indebtedness against the real estate of S. D. Rossi, Incorporated, and to the payment of the cost of certain improvements on certain pieces of said real estate. In this opinion we are amply supported by decisions, based upon similar facts, in this and other jurisdictions. [In re Estate of Soulard, 141 Mo. 642, 43 S. W. 617; Harris Banking Co. v. Miller, 190 Mo. 640, 89 S. W. 629; Sims v. Brown, 252 Mo. 58, 158 S. W. 624; Mendenhall v. Pearce (Mo. Sup.), 20 S. W. (2d) 670; Van Cott v. Prentice, 104 N. Y. 45; Stone v. Hackett, 78 Mass. (12 Gray) 227; Talbot v. Talbot, 32 R. I. 72; Kelly v. Parker, 181 Ill. 49; Lewis v. Curnutt, 130 Iowa, 423; Innes v. Potter, 130 Minn. 320; Nichols v. Emery, 109 Cal. 323.]

By the delivery of the deed of trust and the certificates covering the 4,000 shares of stock of S. D. Rossi, Incorporated, the settlor divested himself of the legal title to said shares of stock and vested it in the trustees, for the uses and purposes specified in the deed of trust. True, he reserved a beneficial interest in the trust property, the right to receive the net income derived therefrom during his lifetime. But this was one of the declared purposes of the trust, and did not affect its validity. He could as well make the net in-

come payable to himself during his lifetime as to any other person. [In re Estate of Soulard, Stone v. Hackett, supra.] Moreover, his reservation of the net income of the trust property for life is strong evidence of his intention to transfer the title to the property, subject to that reservation. [Williams v. Latham, 113 Mo. l. c. 174, 20 S. W. l. c. 101; Sneathen v. Sneathen, 104 Mo. l. c. 209, 16 S. W. l. c. 499.] It makes no difference that he received this income in the form of salary from S. D. Rossi, Incorporated, of which he was president and treasurer. [Talbot v. Talbot, supra, l. c. 93.] And certainly he was privileged to do with it as he pleased. The fact that he paid the indebtedness against the real estate of the corporation out of his salary merely indicates that it was his purpose to increase the value of the property which he had put in trust for the benefit of his family after his death. Nor was it inconsistent with a completely executed trust for him to reserve the right to vote or direct the voting of said shares of stock and the right to hold such offices in the corporation as he desired. That was not a reservation of title, but of reasonable powers, coupled with the trust, for the protection of his equitable right to the net income of the trust property during his lifetime. [In re Estate of Soulard, Van Cott v. Prentice, supra.] And, while one of the trustees testified that he and the other trustee voted said shares of stock at all meetings of the stockholders of the corporation, it may be assumed that the settlor directed the voting of said shares of stock at all of such meetings during his lifetime. Nor did the provision in the deed of trust that said shares of stock should not be transferred on the books of the corporation until after the death of the settlor, except by his written consent, prevent a complete transfer of the legal title to said shares of stock *in praesenti*, notwithstanding the by-law of the corporation, which says, "The stock of this company shall be transferred only on the books of the company, and every transfer of stock shall be subject to the lien of the company thereon for any debt," and Section 9743, R. S. 1919, which says, "The stock of every company formed under this article shall be deemed personal estate, and shall be transferable in the manner prescribed by the by-laws of the company; but no shares shall be transferred until all previous calls thereon shall have been fully paid in." [Insurance Co. v. Goodfellow, 9 Mo. 150; Chouteau Spring Co. v. Harris, 20 Mo. 383; Moore v. Bank, 52 Mo. 377; Bank v. Richards, 74 Mo. 77, approving decision of Court of Appeals (6 Mo. App. 454) in same case; Wilson v. Ry. Co., 108 Mo. 588, 18 S. W. 286; Trust & Savings Co. v. Lumber Co., 118 Mo. 447, 24 S. W. 129.] "It is evident that the Constitution (Art. XII, Sec. 15) makes no inhibition on the transfer of the stock of a corporation in other modes than the formal one upon its books, nor does the statute (Sec. 739, R. S. 1879, same

as Sec. 9743, R. S. 1919) prohibit the usual method of transfer, to-wit, by the transfer of the certificate. The by-laws, it seems in this instance, make such prohibition; but the general current of authority admits the validity of transfers made outside of the books of the corporation, some adjudications holding that such transfer, though not recorded on the books, passes the *legal* title; and it is generally held that such regulations made in the by-laws are made for the benefit, protection and convenience of the corporation *itself*, and not for third parties, and that they do not incapacitate the stock-holder from parting with his interest, and that his assignment, though not on the books, passes his entire title to the stock. This ruling appears to be in accordance with a custom generally if not universally prevalent in the commercial world; a custom which should not be lightly disturbed by the courts." [Wilson v. Ry. Co., supra, 108 Mo. l. c. 609, 18 S. W. l. c. 296.] Nor was it inconsistent with a valid trust for the settlor to reserve the right "to change the manner, time and amounts of the payments" to be made by the trustees, as provided in the deed of trust. [Kelley v. Snow, 185 Mass. 288.] Even the reservation of the power to revoke a trust does not render it invalid or change its character. [Sims v. Brown, Van Cott v. Prentice, Stone v. Hackett, Talbot v. Talbot, Kelly v. Parker, Lewis v. Curnutt, Nichols v. Emery, supra.] "Although the power of revocation is reserved, the trust is as good and effectual as if irrevocable, until the power is exercised." [1 Perry on Trusts & Trustees (7 Ed.) 136, sec. 104.]

III. In holding that a completely executed trust was created by the delivery of a deed of trust and the certificates covering the 4,000 shares of stock of S. D. Rossi, Incorporated, we have answered the argument that the deed of trust is testamentary in character, "a will masquerading as a deed." The settlor having reserved the net income of the trust property during his lifetime, the active duties of the trustees did not begin until after his death. But, such postponement of the active duties of the trustees and of the enjoyment of the trust estate by the beneficiaries other than the settlor does not change this instrument, otherwise a deed of trust, to an instrument testamentary in its nature. [Sims v. Brown, supra, 252 Mo. l. c. 67, 158 S. W. l. c. 627, and cases cited.] "From its very nature a trust involves the idea of separation of the beneficial interest from the legal title. When a trust is executed by the delivery of a simple conveyance to the trustee, that act and instrument serve to pass an immediate present interest to the *cestui que trust*, no matter how far in the future the enjoyment of the benefit thus provided may be deferred." [Lewis v. Curnutt, supra, 130 Iowa, l. c. 432.] "A man may desire to make disposition of his property in his lifetime to avoid administra-

tion of his estate after death. Indeed, in view of the fact, both patent and painful, that the fiercest and most expensive litigation, engendering the bitterest feelings, springs up over wills, such a desire is not unnatural. And when it is given legal expression, as by gifts absolute during life, or by gifts in trust during life, or voluntary settlements, there is manifest, not only an absence of testamentary intent, but an absolute hostility to such intent." [Nichols v. Emery, supra, 109 Cal. 1. c. 331; see, also, Van Cott v. Prentice, Kelly v. Parker, Innes v. Potter, supra.]

IV. It is argued that "the grant attempts to pass the equitable title to Rossi's children for life, one-half the remainder to their surviving spouses for life, remainder over on the death of the last survivor to the male children or descendants of Victor and Harvey then living," and violates the rule against perpetuities because the "remainder over" might be postponed beyond the limitation period (twenty-one years after a life in being at the time of the grant) by the interest "for life" of a surviving spouse of one of Rossi's children (or of his grandson, Harold G. Johnson), if such surviving spouse be born after the time of the grant. In support of this argument the administratrix makes two contentions: first, that in providing for "the remainder over," or the termination of the trust, "after the death of the last survivor of said parties of the third part," the settlor intended to include surviving spouses of his children and grandson in the class of beneficiaries designated as "said parties of the third part," and, second, that, even though the words, "said parties of the third part," are not so construed, the same result is produced by the provision that the trustee shall, under certain conditions, pay a certain sum of money to any such surviving spouse "for and during his or her life, and so long as he or she shall remain unmarried."

(a) In the first paragraph of the trust instrument the settlor's widow, ten children and grandson are designated, by their respective names, as "parties of the third part." And, while the words "parties of the third part" are used in various provisions of the instrument, there is nothing within its four corners which indicates an intention to include in that designation any person or persons other than the settlor's widow and children and grandson. Surviving spouses of the settlor's children and grandson are mentioned in one provision only, which reads, in part:

"After the death of said Madeline Rossi (the settlor's widow) said parties of the second part (trustees), or their successors, shall, until the death of the last survivor of the *parties of the third part*, pay over to *the remaining parties of the third part* said net income in equal parts, share and share alike, at least once each quarter (then providing for children or other descendants of said parties

of the third part), and in the event any of the *parties of the third part* die, either before or after the death of said Madeline Rossi, leaving surviving him or her no children, or descendants, but shall leave surviving a husband or wife with whom *said party of the third part* so dying shall have been actually living at the time of his or her death, then upon the death of such *party of the third part,* said parties of the second part shall pay to such surviving husband or wife of such deceased *party of the third part* for and during his or her life, and so long as he or she shall remain unmarried, one-half of the share of said net income of said deceased *party of the third part* would have been entitled to had said *party of the third part* not died (then providing that the other half of such share be paid to the other parties of the third part or their children or descendants in equal parts)." (Our italics.)

Immediately following this provision is the provision which reads:

"After the death of the last survivor of said parties of the third part, said parties of the second part or their successors, shall assign, transfer and convey all of the property and money then in their hands to the male children or descendants of the parties of the third part, Victor D. Rossi and Harvey J. Rossi, then living, in equal parts *per stirpes.*"

It will be noted that, in the provision, above quoted, relating to the distribution of the net income of the trust property after the death of the settlor's widow, the settlor's children and grandson are referred to as "the remaining parties of the third part," and as "said parties of the third part," and as "the parties of the third part," and a surviving spouse of any of the settlor's children or of his grandson is referred to as "such surviving husband or wife of such deceased party of the third part;" in other words, the settlor's children and grandson and their surviving spouses are provided for as two separate classes of beneficiaries. It is perfectly clear, therefore, that, in providing for the "remainder over," or the termination of the trust, "after the death of the last survivor of said parties of the third part," the settlor did not intend to include surviving spouses of his children and grandson among the persons designated as "said parties of the third part," and the words "said parties of the third part" cannot be so interpreted.

(b) It will be noted also that the distribution of the net income of the trust property after the death of the settlor's widow is authorized only "until the death of the last survivor of the parties of the third part," and that surviving spouses of the parties of the third part have only a contingent interest in the income which is given, in the first instance, to the parties of the third part. Thus it is seen that the trust instrument provides for the termination of such payments of income and for the "remainder over," or the termination of the trust, at the same time, that is, at the death of

944

the last survivor of the parties of the third part. These two express provisions of the trust instrument plainly show, we think, that the settlor did not intend to provide for surviving spouses of deceased parties of the third part after the death of the last survivor of the parties of the third part, notwithstanding the provision for certain payments of income to a surviving spouse of a deceased party of the third part "for and during his or her life, and so long as he or she shall remain unmarried," and we think that these provisions should be so construed. This construction is in harmony with the general objects of the trust and will uphold the validity of the trust. The construction for which the administratrix contends is in conflict with two express provisions of the trust instrument and will invalidate the trust. And, even though it be conceded that the instrument is fairly susceptible of both of these constructions, it is our duty to adopt the one which will not offend against the rule against perpetuities. [Gray on The Rule Against Perpetuities (3 Ed.) sec. 633, p. 499; 1 Perry on Trusts and Trustees (7 Ed.) sec. 381, p. 638.]

It follows that we do not agree with the administratrix in either of the contentions above mentioned, and that the trust instrument, as we construe it, provides for the "remainder over," or the termination of the trust, upon the death of the last survivor of persons in being at the time of the creation of the remainder interests, whereas the limitation period includes an additional twenty-one years. [Gray on The Rule Against Perpetuities (3 Ed.) sec. 201, p. 174.]

V. This brings us to the final contention of the administratrix —that there is a failure of proof of the assignment of the 120 shares of stock of S. D. Rossi Grocery Company.

That it was within the scope of the settlor's original plan to add other property to the original trust property is indicated by the provision therefor in the trust instrument, which he executed and delivered to the trustees on January 10, 1922. According to the testimony given by Victor D. Rossi in the probate court, which the administratrix put in evidence in the circuit court, he and his sister, Mae R. Haseman, have jointly held these shares of stock as trustees ever since November 5, 1925, about one month prior to the settlor's death, when the same were "received" from the settlor and came into their possession as trustees; and, at that time and immediately prior thereto, these shares of stock were owned by the settlor. As shown above in our statement of the evidence, the following indorsements appear on each of the eleven certificates covering these shares of stock:

On the back of each certificate:

"For Value Received, I hereby sell, assign and transfer unto Victor D. Rossi and Mae R. Haseman, Trustees, all the shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint the Vice President to transfer the said Stock on the books of the within named Corporation with full power of substitution in the premises. Dated July 5, 1922.

"In the presence of        S. D. ROSSI,
  "Mae R. Haseman.       By V. D. ROSSI,
"Ten Cents U. S.                Agent.
"Revenue Stamp Canceled."

On the face of each certificate:

"Canceled and Certificate No. 19 issued in lieu hereof January 16th, 1925.

"V. D. ROSSI, Secretary."

From the indorsement on the back of each of said certificates, it may be reasonably inferred that the settlor wrote said indorsements, or caused the same to be written, on July 5, 1922, with the intention of signing said indorsements and of assigning these shares of stock to the trustees on that day, or sometime thereafter, as additional trust property. However, the signing of said indorsements or similar indorsements by the settlor was not essential to a valid assignment of these shares of stock. If the settlor delivered said certificates to the trustees on November 5, 1925, and intended thereby to assign these shares of stock to the trustees as additional trust property, the legal title to these shares of stock passed to the trustees at that time, subject to the terms and conditions of the trust instrument. From the indorsement on the face of each of said certificates, it appears that these shares of stock were transferred on the books of S. D. Rossi Grocery Company to the trustees on January 16, 1926, about one month and ten days after the death of the settlor. The trust instrument expressly authorized the trustees to transfer the 4,000 shares of stock of S. D. Rossi, Incorporated, on the books of the company after the death of the settlor, and it provides that the trustees shall hold additional trust property "under the same conditions and with the same powers" as are declared therein with reference to the property thereby conveyed. If the 120 shares of stock of S. D. Rossi Grocery Company were assigned to the trustees by the settlor on November 5, 1925, as additional trust property, then, by virtue of the above-mentioned provisions of the trust instrument, the trustees were vested with the power, at the time of such assignment, to transfer these shares of stock on the books of the company after the death of the settlor. The trust instrument further provides that "the fact that additional property shall have been delivered and conveyed to the parties of the second part (trustees) shall be noted by an addition to this

instrument made at the time of said delivery and conveyance;" and, so far as the record shows, no such addition to the trust instrument was made at the time of the alleged delivery and conveyance of these shares of stock to the trustees. But, in our opinion, a failure to note a conveyance of additional trust property by an addition to the trust instrument would not invalidate such a conveyance. And the evidence, as we view it, is sufficient to support the finding that the settlor delivered the eleven certificates covering the 120 shares of stock of S. D. Rossi Grocery Company to the trustees, intending thereby to assign these shares of stock to the trustees as additional trust property, and that he did thereby assign these shares of stock to the trustees as additional trust property, subject to the terms and conditions of the trust instrument.

It is well settled that a completely executed voluntary trust will be enforced. Indeed, courts are ever anxious to carry out the intention of parties as manifested by their deeds or declarations of trust.

The circuit court was fully warranted in its findings of fact and clearly right in its conclusions of law. The judgment is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.