(Nos. 29328-29395.—

In re Estate of Darlene Stevens Reeve.—(Edgar Bronson Tolman *et al.,* Trustees, Appellees.—Austin Bryant Reeve *et al.,* Appellants.)

*Opinion filed March 20, 1946*

IVOR JEFFREYS, of Chicago, for appellants.

TRIMBLE & TRIMBLE, and WILSON & WILSON, both of Princeton, and HOWARD B. BRYANT, of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of Bureau county construed the will and codicil thereto of Darlene Stevens Reeve, deceased. From that decree and a subsequent order relative to the payment of attorney's fees, Austin Bryant Reeve, and his wife, Paula Knop Reeve, prosecute appeals, a freehold being involved.

Darlene Stevens Reeve, a widow, and a resident of Princeton, died testate on December 18, 1933, leaving surviving as her only heirs-at-law her sons, Justus Stevens Reeve (hereinafter referred to as Justus) and Austin Bryant Reeve (hereinafter referred to as Bryant.) The testatrix's estate consisted of a relatively modest amount of personal property and considerable real estate. Her last will and testament, dated November 14, 1930, and a codicil, dated December 15, 1930, were admitted to probate by the county court of Bureau county. The estate has been fully administered, and the property turned over to the trustees named in the will, who now hold the same, as such trustees. By section I of the will, she devised all her farm lands in Bureau county to Edgar Bronson Tolman, her brother-in-law, and Blanche Tolman Fiedler, her niece, as trustees for the time and upon the conditions and purposes described. Subparagraph (1) of section I confers upon the trustees full power to manage and operate "the business of my farm lands," and to pay taxes and insurance, maintain and repair buildings thereon, and all other powers appropriate to the operation and management of the trust property. By subparagraph (2), the testatrix provided that all the net income derived from farms Nos. 13 and 14

·shall be used by the trustees for the support and maintenance of Justus, including medical service and other expenses reasonably incidental to the condition of his health, for and during the term of his natural life. All the net income derived from her other farm lands was directed to be divided equally between her two sons, Justus and Bryant, share and share alike, and to the survivor of them for the balance of the term of his life. Subparagraph (3) provides that if a widow but no lawful issue survive Justus the widow shall receive one half of the net income from farms Nos. 13 and 14 and one fourth of the net income from the balance of the farm lands so long as she remains the widow of Justus, the remainder of the income to go to Bryant during his life. The fourth subparagraph of section I provides that if Justus die leaving lawful issue surviving, the trustees shall devote the net income from farms Nos. 13 and 14 and one half of the net income from the other farms (subject to the payment of one fourth thereof to the widow of Justus, as provided in subparagraph (3),) to their support, maintenance and education until the youngest surviving child attains the age of twenty-one years. When this time is reached, the trustees are directed to convey to the then surviving children of Justus, and to the child or children of any deceased child, *per capita* and not *per stirpes,* in fee simple, farms Nos. 13 and 14 and an equal undivided one-half interest in four other farm properties known as Nos. 4, 7, 8 and 9. By subparagraph (5), provision is made that if Justus survive his mother and die leaving no widow or lawful issue, the trustees shall pay to Bryant for and during the term of his natural life, all the net income of all the farms, Nos. 13, 14, 4, 7, 8 and 9. A further provision is that the reversionary interest in these farms and in all the farm lands of which the testatrix died seized shall remain in the trustees to be held and disposed of by them, as in her will specified. By the sixth subparagraph of section I, the testatrix provided

that if Bryant survives his brother, Justus, and dies leaving lawful issue surviving, the net income of the trust estate (subject to the income provisions described for the widow and children, if any, of Justus,) shall be used for the support, maintenance and education of the surviving children of Bryant until the youngest attains the age of twenty-one years. When Bryant's youngest child reaches his majority, the trustees are directed to convey to the then surviving children of Bryant, and to the child or children of any deceased child or children of Bryant, *per capita* and not *per stirpes,* in fee simple, the remainder of the farms, except lands conveyed to or reserved for any surviving children of Justus. The seventh subparagraph of section I provides that if neither of her two sons survive the testatrix, or if they die before or after her, leaving no lawful issue, all the farm properties shall go to the then surviving children and to the children of any deceased child of Blanche Stevens Tolman, deceased, a sister of the testatrix, and to their heirs, in ·fee simple. Detailed provision is made for division of the property in such contingency among Edgar Bronson Tolman, Jr., nephew, and Lurena Tolman Stubbs and Blanche Tolman Fiedler, nieces of the testatrix. Subparagraph (7) concludes with the provision that, if there be a surviving widow of Justus, the provisions of the will for her benefit shall be a charge upon the land devised to the children of Blanche Stevens Tolman. Provisions of the will relating to the disposition of other property need not be referred to in this connection.

The codicil· of December 15, 1930, consists of four sections. Only sections 1 and 2 are material to the first branch of the case. The first section of the codicil, after referring to the execution of her will on November 14, 1930, expressly declares that the testatrix did not intend, by the codicil, to revoke, rescind or annul her will, but merely to modify certain provisions, the modifications to · be effective in the future, and that "in the meantime I

reaffirm the provisions of my said Will and declare my intent also that until ten years after the date of my death all of the provisions thereof shall remain in full force and effect, and that after said period of ten years all of the provisions of my said Will shall remain in full force and effect except as modified by this codicil." Section 2 of the codicil is as follows: "If my son Austin Bryant Reeve survive me and be living five years after the date of my death, I direct my trustees convey to him, in fee simple absolute, an equal undivided one-half (½) of my farm lands in Bureau county, Illinois. At that time also the trust created by my said Will shall terminate as to my said son Bryant and he shall have and receive one-half of that portion of my personal property not theretofore disposed of by my trustees, subject however to all the provisions of my said Will in favor of others than my said son Bryant."

On February 16, 1944, the plaintiffs, Edgar Bronson Tolman and Bradford Newcomb Stevens, successor to Blanche Tolman Fiedler, as trustees of the estate of Darlene Stevens Reeve, filed their amended and supplemental petition in the circuit court of Bureau county for the interpretation of her will. All parties named in the will, as devisees or legatees, and their respective spouses, were made parties defendant. Bryant and his wife filed a joint answer and, also, a countercomplaint. Justus answered, and answers were interposed by the children of Blanche Stevens Tolman and their spouses. An answer to the countercomplaint of Bryant was filed by the trustees. Upon the issues made by the pleadings and a stipulation of facts a decree was entered.

A summary of the pertinent portion of the stipulated facts follows: Justus was born March 9, 1890, and Bryant in 1891. Justus has never married. Bryant was first married in 1922, and separated from his wife, Myrtle, on February 28, 1929. No children were born of this mar-

riage. Bryant's wife filed an action for separate mainte-
nance in the superior court of Cook county on August 2,
1929, and later, amended the bill to pray for a divorce.
A divorce decree was eventually rendered on April 15,
1936. Bryant and his mother had long been estranged,
partly because of his marriage which she disapproved.
Upon separation from his wife in 1929, Bryant went to
his mother's home at Princeton, and lived with her for a
period of three months and, apparently, a reconciliation
resulted which continued until his mother's death. Bryant
was later married to Paula Knop, his present wife. No
children have been born of this marriage. Bryant was
graduated from a leading technological school in 1916, and
has since been engaged in various employments of an engi-
neering nature in Chicago and elsewhere, and, at present,
holds a responsible position with a nationally known cor-
poration at Detroit, Michigan.

When eleven years of age, Justus was stricken with
poliomyelitis, or infantile paralysis. He was taken to spe-
cialists in Europe seeking a recovery from the illness, but
no cure was found. Justus was graduated from Harvard
College in 1916. He then returned to his mother, and lived
with her until her death. He has never engaged directly
in any business or profession, and has never been gain-
fully employed for any considerable length of time. At-
tempts to engage in business pursuits and public activi-
ties proved too difficult for him. From the testimony of
Justus, it appears that two years' treatments by the best
orthopedic specialists of the day afforded him no relief
and, when about fifteen or sixteen years of age, a specialist
in Boston told him that further treatments were useless
and that the best course was not to continue, but to dis-
card, braces and other aids, and to try to live as natural
a life as possible, physically, and to live outdoors and
exercise moderately, especially swimming. More recent
advice has been substantially to the same effect. He has

been particularly advised not to attempt anything confining or carrying much responsibility. Further, the prognosis is that the time he can be physically active is limited, and that he should look forward to decreasing ability towards physical activity, the best way to extend this period being, however, to live a simple, quiet, outdoor life. About the time his parents were advised to discontinue further treatment, the spine was laterally curved, and the muscles of one side permanently paralyzed, one leg being shorter than the other. This condition has continued ever since except, as Justus indicated, there seems to be slightly less strength in the back and spine than previously.

By the decree entered on July 14, 1945, the chancellor found that the intent of the testatrix manifested by her codicil was, first, to insure to her invalid son, Justus, a continuance of the payment to him of the entire income from farms Nos. 13 and 14 during his lifetime and, conversely, that she did not, by the codicil, intend to give half of this income to her other son, Bryant, who was fully able to take care of himself by the practice of his profession as a mechanical engineer; second, to insure the same income to the children of her son Justus, by reason of his inability to provide by his own efforts any estate for them, and, third, to make sure that if both of her sons should die without lawful issue her farm lands should not go out of the Stevens line of descent but should go to the children of her deceased sister, Blanche Stevens Tolman, and thus remain in the Stevens family. So far as relevant to the construction of section 2 of the codicil, the decree adjudged that, by the provisions of the will, Justus acquired the right to have the entire net income of farms Nos. 13 and 14 for the term of his natural life, and that the provisions of the codicil which direct the testatmentary trustees to convey to Bryant an undivided one-half interest in the testatrix's farm lands in Bureau county, in fee simple, are subject to all the provisions of the will in

favor of all other devisees named therein. Accordingly, the trustees were directed to execute and deliver to Bryant a trustee's deed conveying to him an undivided one-half interest in the remaining unsold farm lands, subject, however, to the provisions of the will in favor of others than himself, as adjudged by the decree.

Subsequently, Bryant and his wife filed a petition seeking the allowance of attorney's fees for services performed by their attorney. On November 13, 1945, the court found that the will and codicil of Darlene Stevens Reeve were so ambiguous and uncertain as to require judicial construction; that, in view of the necessity of the construction previously declared for the protection of the trustees and for the benefit of the beneficiaries of the trust, and in view, also, of the nature and purposes of the answer and countercomplaint of Bryant and the answer of Justus, the fees of the attorneys for the trustees should be paid from the general funds of the trust estate and the fees of the attorneys for Justus and Bryant, respectively, out of funds in the hands of the trustees for or belonging to them. The separate appeals of Bryant and his wife, the first, (No. 29328) from the principal decree of July 14, 1945, and the second (No. 29395) from the supplementary order of November 13, 1945, have been consolidated for opinion.

The present controversy is primarily concerned with the construction of the clause "subject however to all the provisions of my said Will in favor of others than my said son Bryant," appearing at the conclusion of the second and last sentence of the second section of the codicil. The trustees (appellees) contend, and the chancellor found, that the codicil should be construed in the light of the provisions of the entire will and that, construing the entire will and codicil together, the testatrix intended a one-half undivided interest in the lands should be conveyed to Bryant, subject to the limitations, restrictions, reversions and remainders provided for in the original will for the benefit of others.

Bryant and his wife, the appellants, maintain, on the other hand, that, under the second section of the codicil, the former was devised a one-half interest in all his mother's farm lands remaining in the trust at the expiration of ten years after her death, including farms Nos. 13 and 14, insisting that the language in section 2 is free from ambiguity and expresses the manifest intent of the testatrix to give Bryant an equal undivided one-half of her farm property in fee simple absolute.

Familiar rules pertaining to the construction of wills must be borne in mind, not only in the construction of an ambiguous will but, also, in determining whether the will is so ambiguous as to require construction. The purpose of construing a will is to give it the meaning and interpretation which the testator intended, and his intention, as ascertained from a consideration of the entire will, will be carried out whenever it can be done without violating some established rule of law or public policy. (*Papa* v. *Papa,* 377 Ill. 316; *Riddle* v. *Killian,* 366 Ill. 294; *Dahmer* v. *Wensler,* 350 Ill. 23; *McClure* v. *McClure,* 319 Ill. 271.) In ascertaining the intention of a testator, the words of the will are to be read in the light of the circumstances under which the will was made, including the nature, extent and condition of the testator's property as well as his relations to his family and the beneficiaries named. (*Norton* v. *Jordan,* 360 Ill. 419.) All the provisions of a will and a codicil are to be construed as a whole and effect given, if possible, to every part of both the will and the codicil. If a conflict obtains between the will and the codicil, an interpretation is preferred rendering effective the will and eliminating or reconciling conflicts, if such construction is not inconsistent with the general intent and purpose of the testator, as gathered from the entire instrument. (*Alford* v. *Bennett,* 279 Ill. 375.) Where, as here, the codicil does not contain a clause of revocation but, instead, includes specific clauses of ratification, the

provisions of the will are to be disturbed only so far as is necessary to effectuate the provisions of the codicil. In all other respects, the will and codicil are to be construed together. (*Clark* v. *Todd*, 310 Ill. 361.) In short, a codicil does not supersede a will but should be considered in harmony with it unless there is a clear revocation of the provisions of the will by the codicil. *Tucker* v. *Tucker*, 308 Ill. 371; *Kern* v. *Kern*, 293 Ill. 238.

Appellants' argument that the words "in fee simple absolute" in the second section of the codicil control the construction of the entire will as to an undivided one-half of the farm lands, and revoke all provisions of the will as to others than himself, is untenable. The controlling intent and the paramount interest of the testatrix expressed in her will and, also, in the codicil was to favor her son, Justus, on account of his physical handicaps, by assuring him property and income therefrom as far as was in her power so to do. Adequate reasons for her solicitude for her older son readily suggest themselves, and no useful purpose can be served by further reference to them. Appellants argue, however, that the words of the codicil "subject however to all the provisions of my will in favor of others than my said son Bryant" refer only to personal property mentioned in the same sentence and not to the provision in the preceding sentence of section 2 relating to an undivided one-half of the farm lands in Bureau county. The second section must be considered in its entirety, and, when so considered, it expressly deals with both real and personal property. Instead of casting doubt upon the intent of the testatrix, the codicil is susceptible of the interpretation that it manifests once again her controlling desire to make additional provision for Justus. The language of the codicil ratifies the provisions of the will, except as modified, even after ten years when the codicil became effective. Then, by section 2 of the codicil, the testatrix provided that if her son Bryant should be living five years

after her death, the trustees were directed to convey to him, in fee simple absolute, an equal undivided one-half of all her farm lands in Bureau county. In the next sentence in section 2 of the codicil, she provided that, at the same time, the trust should terminate as to Bryant, and that he should have one half of her personal property not theretofore disposed of. In this same sentence, she used the words, "subject however to all the provisions of my Will in favor of others than my said son Bryant."

By an instrument signed by the two sons on August 22, 1939, after referring to the ambiguity in the will and codicil with reference to the time when Bryant should aquire the estate bequeathed and devised to him by the codicil, and whether it was the intention of the testatrix to continue the trusteeship as to him beyond the date of five years after the date of her death, it was agreed that until such question is definitely determined, or until further notice to the trustees by Bryant, the trustees should continue to handle and manage the estate and distribute the income therefrom as though said five-year period had not expired.

To adopt the construction contended for by appellants would be to construe the codicil as revoking all of the provisions of section I of the will, "in favor of others" than Bryant, in so far as such provisions relate to the farm lands. Section I is the only part of the will in which provisions "in favor of others" are made with reference to the one-half interest in the farm lands, referred to in section 2 of the codicil. In support of their contention, appellants direct attention to the fact that the record shows Bryant married in 1922; that, as a result of this marriage, an estrangement arose between him and his mother; that, in 1929, his then wife brought an action against him for separate maintenance, which was pending until 1936, when, upon an amended complaint, a decree for divorce was entered. It is further pointed out that after Bryant and

his first wife separated, he and his mother became reconciled, and appellants assert that the testatrix made the provisions for him in her will to prevent the estranged wife from obtaining any of her property. They argue that, thereafter, she decided to change those provisions of the will, and did so by the execution of the codicil, and, thereby, intended to remove all restrictions on the portion of her estate devised to Bryant. The trouble with this argument is that the conditions existing at the time the will was executed were exactly the same as they were when the codicil was made. The reconciliation between Bryant and his mother had occurred prior to the time the will was executed. He had returned to the family home to live with his mother. The separate maintenance action was filed in 1929, and was pending at the time the will was made, as well as on the date the codicil was executed, thirty-one days later. The facts relied upon to support this argument prove nothing. Bryant's marital affairs were exactly the same at the time the codicil was made as they were on the date of the will. No change occurred until the decree for divorce was entered in 1936. This was nearly three years after the death of the testatrix.

Appellants also argue that, to sustain the interpretation of the chancellor, it is necessary to disregard the period at the end of the first sentence of section 2 of the codicil dealing with her real estate. The fact that the preceding sentence is complete and "ends with a period," as they point out, is far from decisive. Punctuation changes are warranted, if necessary and helpful, in arriving at the proper construction. In construing a will, the punctuation and paragraphing may be disregarded and altered if the change renders the meaning more obvious and unquestionable. (*Kern* v. *Kern,* 293 Ill. 238; *Johnston* v. *Gastman,* 291 Ill. 516; *Kuehle* v. *Zimmer,* 249 Ill. 544; *Johnson* v. *First Nat. Bank,* 192 Ill. 541.) In the present case, however, the change in punctuation complained of is not

necessary to arrive at the construction placed upon the will and codicil by the chancellor. If the second section of the codicil contained only the first sentence, Bryant admittedly would have been entitled to a conveyance of an undivided one-half interest in his mother's farm lands, without restriction. The unalterable fact remains that the first sentence does not stand alone. Without any change in punctuation, if the entire plan of disposition of the testatrix's property be considered, and the surrounding circumstances of her family, as well as the condition of her estate, the conclusion is inescapable that the gift to her younger son in the first sentence of section 2 is limited by the provisions of the sentence immediately following. Where a testator, by his will, employs language sufficient to pass title in fee, if it is clearly shown by other clauses or parts of the will that the testator intended to limit the fee thus granted, such intention will prevail and it is wholly immaterial in what part of the will such intention is manifested. (*Meins* v. *Meins*, 288 Ill. 463.) In particular, isolated language in one clause creating an estate of inheritance may be limited if it appears from the entire instrument that it was the intention to impose a limitation on the estate. (*Keiser* v. *Jensen*, 373 Ill. 184.) Moreover, when the fact is considered, as it must be, that the testatrix had no personal property in excess of her indebtedness upon which the last sentence of section 2 of the codicil could operate, the conclusion is impelling, to put it mildly, that the challenged clause was not limited to the personal property referred to in this sentence. The meaning sought to be attributed to the clause in controversy would render the provision nugatory. Again, the application of the controverted clause to real estate is affirmed by the fact that no other provisions of the will affect a half of the personal property in favor of others than Bryant to which this clause could apply. It is true that modest bequests were made to certain individuals not involved in the present

litigation. These bequests had, apparently, long since been paid when the codicil came into effect, namely five or ten years, as the case may be, after the death of the testatrix. Nor could it apply to any of the personal effects of the testatrix because the will contains no provisions for others than Bryant affecting any undivided one-half of them. It could not apply to securities described in the fourth section of the will because this personal property was bequeathed equally for the use of her sons. In short, the only logical meaning possible is that the clause in controversy refers to all the property mentioned in section 2 of the codicil, namely, personal property and an undivided one-half of the farm lands. The construction urged by appellants would, for all practical purposes, require the elimination of the second sentence of section 2 of the codicil as meaningless. This cannot, and will not, be done. It must be remembered that the testatrix was fully aware of the great difference between the earning capacity of her sons owing to the physical handicap of the older of the two. She well knew from her own experience the extent of medical care required and the attendant expense. Under these circumstances, it seems self-evident that the construction urged by Bryant would do violence to his mother's intent, depriving her son Justus of the benefit of any part of the income from farms Nos. 13 and 14, expressly given to him for his lifetime by the will.

By the plain language used in the codicil, the testatrix expressed the intention that in making the modifications in the provisions of her will for the benefit of her son Bryant, no provision of the will in favor of any other devisee or legatee should be changed or modified by the codicil. Any other construction would change and revoke all of the provisions in the will as to the interest in her farm lands, in which Justus was given a life estate, with reversion or remainder over to others. That she did not intend by the codicil to make any modification or changes

in the provisions of the will as to the interest devised to Justus, his surviving widow or children, or as to contingent remainders or reversions in the farm lands, given to others, we think is clearly apparent. This is the only construction which can be adopted in construing the will and codicil as one instrument so as to give effect to all the provisions of both. As we view it, the will and codicil, when construed together, mean that ten years after the death of the testatrix, the trust should terminate as to the interest of Bryant, in both farm lands and personal property. At that time, Bryant was entitled to have the one-half interest in the farm lands conveyed to him, subject to all the provisions, restrictions, limitations, reversions and remainders made, imposed or reserved in the will, for the benefit of others. At the same time he was entitled to receive the one-half part of the personal property then in the hands of the trustees, the remaining one-half of such personal property to continue to be held in trust for the benefit of Justus. We think the construction placed on the will and codicil by the chancellor, as to the farm lands, was the correct construction and the only construction permitted by the long-settled and fundamental applicable rules. The court erred, however, in not decreeing that Bryant was entitled to receive one half of the personal property described in section IV of the will, remaining in the hands of the trustees, at the expiration of ten years after the death of the testatrix. The decree in No. 29328 must be reversed and the cause remanded for the sole purpose of correcting this error.

Section III of the will devises property in Princeton, described for convenience as the "Old Homestead," and its furnishings, to the trustees for the purposes, first, of maintaining the property as a home for her sons, each to have an equal personal beneficial interest, unassignable and not transferable by operation of law or by order of court. Next expressed is the "wish" that if Justus dies leaving a

wife or children, "each or all of his family may live in the Old Homestead as long as they may desire." In the event of the death of her sons without lawful issue, and "after the death of all of the children of my said sons before they or any of them shall have attained the age of twenty-one (21) years, and after the death or remarriage of the widow of my said son Justus," the third section provides, "then and in such case I give and devise said Old Homestead to my niece Blanche Tolman Fiedler and to her heirs in fee simple," but, if she be not then living, to the Princeton Chapter of the Daughters of the American Revolution as a memorial to the testatrix's father and mother. Other provisions of section III do not require mention. The third section of the codicil reaffirmed the disposition of the Old Homestead made in the original will.

Appellants maintain that the provisions of section III of the will and section 3 of the codicil violate the rule against perpetuities. To support their contention, appellants say that the contingent remainder to Blanche Tolman Fiedler, the niece, or her heirs, is not to vest until the death of Justus' widow and, hence, might not vest within a life or lives in being, at the death of the testatrix, and twenty-one years thereafter. The suggestion is advanced that Justus might marry a woman not born at the time of his mother's death and, indeed, born long afterwards, and that she might possibly survive both Justus and Bryant fifty years or more. It is urged that the vesting of the estate, being dependent upon the happening of this condition, among others, might well take place long after the period provided by the rule and is, consequently, a clear violation thereof. If Justus marries,—and he has not yet done so,—and is survived by his widow, she would acquire, under the will, only the right to occupy the Old Homestead during her widowhood. Section III is explicit in this regard. Justus' widow, if any, acquires no estate whatever, but only a right to occupy the premises so long as

she remains the widow of Justus. She is not given the income from the Old Homestead, but only the right to occupy it. Vesting of the title in fee simple is, hence, not postponed by the provision for the possible widow of Justus. The latest possible moment of vesting is, consequently, the death of either Justus or Bryant, or the death of all their children before any of them reach the age of twenty-one years. The two sons were lives in being at the effective date of the will. If all their children die before they attain the age of twenty-one years, this event must occur within twenty-one years and nine months after the lives in being at the death of the testatrix. (*Branson v. Bailey*, 246 Ill. 490.) It is true that when the remainder in fee vests, it may, perhaps, be subject to the right of Justus' widow to occupy the property but her right so to do would not postpone the vesting of the title since the right given to the widow is not an estate. (Restatement of the Law of Property, vol. 4, p. 2660; *In re Reid's Estate*, 165 Misc. 132, 300 N.Y.S. 124.) The trial court correctly construed the provisions of section III of the will with respect to the Old Homestead. Those provisions do not violate the rule against perpetuities.

Neither section III of the will nor section 3 of the codicil violate the rule against perpetuities for another and adequate reason. Section VII provides that if any of the provisions of the will become susceptible of an interpretation creating an estate of longer duration than is permitted under the law, such provision shall be revoked as to the period of time beyond that permitted by law, and such estate shall continue not longer than twenty-one years after the death of the survivor of the following: Justus; his widow, "if there be one at the date of my decease; his lawful children and descendants of any deceased child or children, if there be any at the date of my decease;" Bryant; his children, and descendants of any deceased child or children, if any, at the date of the death of his mother, and the children

of the testatrix's deceased sister, Blanche Stevens Tolman. The purpose of section VII is obviously to prevent an unintentional violation of the rule against perpetuities. It effectively does so for the reason that, in order to prevent the vesting of the remainder in the Old Homestead, there must be other prior estates created by the will having a longer duration than permitted by the rule. If there is no such prior estate which postpones the vesting, then, obviously, the rule is not violated.

Section IV of the will is also assailed as being a violation of the rule against perpetuities. By this section, interest-bearing securities, money on hand and in banks, and personal property, other than personal effects, are bequeathed to the trustees for the joint use and benefit of the two sons, share and share alike. The testatrix made no disposition of the reversionary interest, at the death of the survivor, by this particular section of the will. The complaint leveled against this provision is that there is no attempt to vest the property in anyone or at any time, and that, so far as the will is concerned, the gift is in perpetuity. The debts of the testatrix exceeded her personal property and, for this reason alone, discussion of the contention with respect to section IV would be academic. We observe, however, that the first paragraph of section IV may well be deemed an absolute gift of the principal of the personal property to the sons and, if it be not so construed, the reversionary clause of the will gives the residue of the estate to the two sons equally if they survive their mother, as they did.

The rule is well settled that if a will creates a life interest, and fails to disclose an intention by the testator to dispose of the remainder, such remainder becomes intestate property. The reversion descends as intestate estate to the heirs-at-law of the testator. (*Tilton* v. *Tilton*, 382 Ill. 426; *Lewis* v. *Harrower*, 197 Ill. 315.) Here, however, the will contains a residuary clause. By section VI, the tes-

tatrix gave all the rest and residue of her estate to her two sons. This residuary gift was subject to the provisions of section IV, that such property be held and managed by the trustees for the joint use and benefit of her two sons, share and share alike. Obviously, under the original will, this beneficial interest would terminate on the death of the surviving beneficiary. However, by the codicil, she provided that as to Bryant the trust should terminate ten years after her death. At that time, he was entitled to the possession and enjoyment thereof, under the residuary clause of the will. As to the remaining one-half of the personal property, the trust continues for the benefit of Justus. At his death the property will pass to his heirs-at-law, under the residuary clause. The contention, therefore, that there was a failure to dispose of the reversion by the will, and that this made the bequest to the trustees a gift in perpetuity, in violation of the rule, cannot be sustained. The reversion was disposed of by section VI of the will. Until ten years after the death of the testatrix the one-half interest therein bequeathed to the trustees for the benefit of Bryant was subject to the trust created by section IV. The reversion in the remaining one-half interest bequeathed in trust for the benefit of Justus is subject to the trust until his death. The residuary clause, together with section VII, "the saving clause," eliminate any possible objection involving the rule of perpetuities.

Complaint is made that the court erred in failing to find that Edgar Bronson Tolman, Jr. forfeited all his rights under the law by reason of witnessing the codicil. Appellants invoke section 44 of the Probate Act (Ill. Rev. Stat. 1945, chap. 3, par. 195,) which ordains that if any beneficial devise, legacy or interest is given in a will to a person attesting its execution, the devise, legacy, or interest is void as to that beneficiary, and all persons claiming under him, unless the will is otherwise duly attested

by the number of witnesses, as prescribed by law. Edgar Bronson Tolman, Jr., a nephew of the testatrix is a remote contingent remainderman under subparagraph 7 of section I of the will. He does not take under the codicil, no provision of any kind having been made for him in the codicil. His testimony was not necessary to establish the will, as he was not a witness thereto. Even if the codicil were void, he would still take under the will to which he was not a witness. Section 44 of the Probate Act is designed to prevent attesting witnesses from taking gifts under a will, for the establishment of which their attestation is necessary. The cases from foreign jurisdictions cited and relied upon by appellants do not support their contention. In *Roberts* v. *Wright,* 48 R. I. 139, 136 Atl. 486, a witness to the codicil was held barred from taking under the codicil. In *Wiley* v. *Gordon,* 181 Ind. 252, 104 N. E. 500, the validity of the attestation of the codicil, alone, was involved. It was contested on the ground that it was witnessed by a legatee named therein. In *Lougee* v. *Wilkie,* 209 Mass. 184, 95 N. E. 221, some of the witnesses to the codicil were legatees under both the will and the codicil. It was there held that while such witnesses could not take under the codicil, they could take under the provisions of the original will in their favor. This is the situation here. Edgar Bronson Tolman, Jr., took nothing under the codicil. He was not barred from taking under the provisions of the original will, which he did not witness, because of the fact that he was a witness to the codicil.

In No. 29395, the court fixed the fees of attorneys appearing in the case. No question is raised as to the amounts of the fees awarded. The amounts appear to be reasonable and proper. Appellants insist that the court erred in directing the attorney's fees of Justus and Bryant be paid by the trustees from funds belonging to each of them, respectively. This contention is well taken. The general

294

rule is that where the testator has expressed his intention in his will so ambiguously as to make it necessary to go into a court of chancery to obtain a construction of the will in order to determine which of two or more adverse claims is valid, the cost of the litigation including solicitors' fees, should be borne by the trust estate. (*Norton* v. *Jordan*, 360 Ill. 419; *Ward* v. *Caverly*, 276 Ill. 416; *Strickland* v. *Strickland*, 271 Ill. 614; *Guerin* v. *Guerin*, 270 Ill. 239.) We think it is apparent from the will and codicil here involved, and on this record, that there was an honest difference of opinion as to the proper construction to be placed on the will and codicil, and that the solicitors' fees allowed by the trial court to all parties should be paid from the general funds of the trust estate.

The decree in No. 29238, and the order in No. 29395, are each reversed and the cause is remanded to the circuit court of Bureau county, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*