James M. NELSON (also known as James M. Nelson III), Appellant-Respondent,

v.

MERCANTILE TRUST COMPANY, as Co-Trustee under Agreement dated July 11, 1924, and as Co-Trustee under the will of L. C. Nelson; Lewis C. Nelson (also known as Lewis C. Nelson III), individually, and as Co-Trustee under Agreement dated July 11, 1924, and as Co-Trustee under the will of L. C. Nelson; Dines Nelson; Virginia Dines Nelson; Eleanor Nelson, Dorothy Nelson and Barbara Nelson (the wives of Plaintiff and of Defendants Lewis C. Nelson and Dines Nelson, respectively), individually and as representatives of a class; Henry G. Nelson (plaintiff's son, also known as Valle Reyburn Nelson), Lewis C. Nelson, Jr., Mary Virginia Nelson, and Richard Nelson (children of defendant Lewis C. Nelson), and Dines Nelson, Jr., Dianne Nelson, and Wendy Nelson (children of Defendant Dines Nelson), all of whom are minors except Lewis C. Nelson, Jr., and Mary Virginia Nelson, individually and as representatives of a class, Appellants-Respondents.

No. 47533.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

Jack M. Chasnoff, St. Louis, for plaintiff-appellant. Tucker & Chasnoff, St. Louis, of counsel.

Thompson, Mitchell, Thompson & Douglas, James M. Douglas, William G. Guerri, John T. Sant, St. Louis, for appellants Mercantile Trust Co. and others.

J. F. Schlafly, Jr., R. Emmett Fitzgerald, Verlie, Eastman, Schlafly & Godfrey, Alton, Ill., for appellant Valle Reyburn Nelson.

C. P. Fordyce, Edgar T. Farmer, St. Louis, for Lewis C. Nelson, III, Co-Trustee. Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, of counsel.

HOLMAN, Commissioner.

On July 11, 1924, L. C. Nelson executed a trust instrument by which he created a trust estate having assets of approximately $600,000. He made provision therein for himself, his son and his grandchildren, with ultimate remainders to be distributed to surviving descendants of his grandchildren. A large portion of the trust corpus has heretofore been distributed to beneficiaries, but three trusts (having an original value of $50,000 each) remain in the hands of the trustees. The three grandsons of L. C. Nelson are each entitled to receive the income from one of those trusts. This suit was instituted by James M. Nelson, one of said grandsons, for the purpose of obtaining an adjudication that the three aforementioned trusts were void because the inter vivos trust instrument creating the same contained provisions that were in violation of the rule against perpetuities. In addition to the trustees and the other two grandchildren, the numerous defendants seem to include all living persons who might have an interest in the controversy. A trial resulted in a decree for plaintiff and a distribution of the trust assets was ordered in accordance with the residuary clause of the will of L. C. Nelson. The decree also provided that plaintiff and all answering defendants were entitled to allowances for attorney fees to be paid out of said trust funds. The defendants (except plaintiff's wife, who defaulted) have appealed and here contend that the trust instrument did not violate the rule against perpetuities and (except Henry G. Nelson) further contend that plaintiff is not entitled to an allowance for attorney fees. Plaintiff has also appealed and, as appellant, contends that none of the defendants were entitled to allowances for attorney fees except the guardian ad litem for plaintiff's minor son, Henry G. Nelson, also known as Valle Reyburn Nelson.

The trust indenture provided as follows:

1. The net income from the trust to be paid to the donor, L. C. Nelson, and his son, J. M. Nelson, Jr., during the lifetime of both in such proportions as they agreed upon. 2. Upon the death of either the donor or his son, all the net income to be paid to the survivor for his life. 3. Upon the death of the survivor of the donor and his son, the trust fund to be held "for the use and benefit of the children of said J. M. Nelson, Jr., namely, Lewis C. Nelson III, Dines Nelson, and James M. Nelson III, and such other lawful children as may hereafter be born unto the said J. M. Nelson, Jr." on these terms:

(a) The trustees were directed to expend the income for the "comfort, maintenance, education and support of such children of said J. M. Nelson, Jr., share and share alike," until they attained the age of 21.

(b) On attaining 21 "the portion of the income arising from each child's share" was to be paid personally to each child.

(c) The trustees were given authority to encroach on principal should the income "be insufficient for the purposes aforesaid."

(d) When each child attained 21, the trustees, in their discretion, were authorized to distribute to such child "its share of the corpus or principal of said estate, or a portion thereof, with the exception of the sum of Fifty Thousand Dollars ($50,000.00) as to each share," which was to remain in trust.

(e) When each child attained the age of 30, the trustees were directed to distribute to such child "its share of the corpus or principal" except $50,000 ("as to each share") and "from each share," which was to remain in trust on terms set out below.

(f) "The net revenue and income from such share shall be paid to such child during the remainder of its natural life; and upon the death of such child, the said trust shall then cease and determine, and the portion or share of the corpus of said trust estate shall be distributed to those persons who, under the laws of the State of Missouri relating to descent and distribution then in force, would be entitled thereto had the said child died intestate." In another paragraph it is provided that said remainders, after the death of the children of J. M. Nelson, Jr., was "to be held and distributed to their lawful descendants, if any; otherwise to those who would be entitled to receive their share under the law had they died intestate."

(g) "However, should any of the said children of said J. M. Nelson, Jr. die before the time hereinabove provided for the distribution of its share of said trust fund, leaving him or her surviving descendants, then and in that event, and thereupon, such descendants shall receive, absolutely, the parent's share of the corpus or principal of the said trust estate, together with all ac-cumulations and additions thereto. However, should any of the said children of said J. M. Nelson, Jr. die before the time hereinbefore provided for the distribution of its share of said trust fund, leaving him or her surviving no descendants, then and in that event, and thereupon, such deceased child's share of the corpus or principal of the said trust estate, together with all accumulations and additions thereto, shall be transferred, conveyed and delivered unto the survivors, or survivor, of such children, and unto the descendants of such as may be deceased; such descendants taking *per stirpes* and not *per capita*. Provided, however, that if any of such children at that time shall not have attained the age of twenty-one (21) years, his or her share shall be retained by the trustees, or the survivor, as a part of the corpus or principal of the trust estate hereinbefore created, and shall be held, managed, controlled, and ultimately disposed of for the benefit of such child or children, the net income therefrom to be paid to them, share and share alike, and upon their attaining the age of twenty-one (21) years, respectively, they shall each receive their proportionate share of said trust estate."

Following the last quoted provision appears a paragraph which, as hereinafter indicated, we consider to be decisive of the primary issue presented upon this appeal. It reads as follows: "The trust hereby created shall in no event continue for a period longer than the lives of all of said children of said J. M. Nelson, Jr., and the survivor of all of them, and twenty-one (21) years thereafter, at the end of which time distribution shall be made in the manner herein provided, irrespective of any other provision of this agreement."

The final paragraph of the agreement provides that it shall be revocable during the lifetime of both L. C. and J. M. Nelson, Jr., but that after the death of either of said parties "said trust hereby created shall be absolutely irrevocable." The trust agreement was thereafter amended on three

different occasions in respects not here material.

On February 4, 1925, L. C. Nelson executed his last will. Codicils were added to the will in April 1928, July 1929, and August 1930. After certain specific bequests, the residue of the estate was placed in trust with provision for the same trustees as those provided for in the inter vivos trust agreement. The trust created by the will provided that the net income therefrom be paid to J. M. Nelson, Jr., for his life and upon his death, said residue be divided into equal parts for J. M. Nelson's widow, Virginia Dines Nelson, and for each of their then living children. The will provided that "said trust as to any child of my said son may be terminated at any time after he reaches the age of twenty-one (21) years, and the estate transferred, conveyed and delivered to such child, if, in the opinion of the trustees he is worthy and of good character and habits, and such distribution would not be to his disadvantage; provided, however, that the trusts created for the benefit of my grandchildren shall in no event continue for a period longer than the lives of my son, J. M. Nelson, Jr., and his children, L. C. Nelson III, Dines Nelson and J. M. Nelson III, or the survivors of them, and twenty-one (21) years thereafter, at the end of which time distribution of the principal shall be made to the persons then receiving the income, irrespective of their attained ages."

A one-fourth share of the residue is still being held in trust for the benefit of Virginia Dines Nelson. However, the co-trustees, in the exercise of the discretion granted to them under the will, terminated the residuary trust for each of the grandchildren after each attained the age of 21 years.

L. C. Nelson died July 15, 1931, and the provisions of the inter vivos trust became irrevocable at that time. He was survived by his only son, J. M. Nelson, Jr., his son's wife, Virginia Dines Nelson, and three grandchildren, to wit: plaintiff James M. Nelson, and defendants Lewis C. Nelson and Dines Nelson. After the death of L. C. Nelson, J. M. Nelson, Jr. did not become the father of any other children and when he died on July 12, 1936, he was survived by his widow, Virginia Dines Nelson, and the three sons hereinabove named. Plaintiff James M. Nelson has one child, Henry G. Nelson, who was born of plaintiff's marriage to Frances Reyburn. That marriage ended in a divorce in November 1952. Lewis C. Nelson has three children, Lewis C. Jr., Mary Virginia, and Richard. Dines Nelson has three children, Dines Jr., Dianne, and Wendy.

On the date the inter vivos trust instrument was executed L. C. Nelson was 75 years of age, J. M. Nelson, Jr. was 48 years of age, and Virginia Dines Nelson was 40 years of age. Lewis, Dines and James were 12, 11, and 6 years of age, respectively. The present trustees of the inter vivos trust, as well as the trust created by the will of L. C. Nelson, are Mercantile Trust Company and Lewis C. Nelson. The trustees and all of the above-mentioned living members of the Nelson families, as well as the wives of James, Lewis and Dines, are parties to this action.

Upon the death of J. M. Nelson, Jr. in 1936, the trustees divided the inter vivos trust estate into three equal shares—one for each of the three children of J. M. Nelson, Jr. The approximate value of each share at that time was $184,000. In 1937, the trustees distributed to Dines Nelson trust assets totaling $130,566.75. In 1937 and 1942, the trustees distributed to Lewis C. Nelson trust assets which totaled in the aggregate $131,907.32. In 1943, the trustees distributed to James Nelson $136,319.-33. After the foregoing distributions were made there remained a trust for the benefit of each of said beneficiaries of the approximate value of $50,000. However, at the time of trial, those trust assets had increased in value so that the Dines Nelson trust had a value of $88,372, the Lewis C. Nelson trust had a value of $110,640, and

the James Nelson trust had a value of $97,789. Each of said beneficiaries has, of course, been receiving from the trustees the net income from his respective trust.

The rule against perpetuities was developed entirely by judicial decision. The modern rule originated in England about the year 1685. "The underlying and fundamental purpose of the rule against perpetuities is founded in the public policy of preventing the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation. The exclusion of property from the channels of commercial development for extended periods of time is considered by the law as a public evil. Since alienability is the object, the destruction of future interests is the means of obtaining this object. * * * Accordingly, a period has been fixed, sometimes varying between jurisdictions, beyond which no one can exclude his estate from the course of free alienability. The immediate object of the rule against perpetuities is to require the vesting of future estates within a limited period of time after their creation and to bar the creation of future interests depending on remote contingencies." 41 Am.Jur., Perpetuities and Restraints on Alienation, § 6, p. 53. "The rule against perpetuities prohibits the granting of an estate which will not necessarily vest within a time limited by a life or lives then in being and twenty-one years thereafter together with the period of gestation necessary to cover cases of posthumous birth." Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 138.

Disregarding for the time being the "saving clause" heretofore quoted, it seems clear that the provisions of the trust instrument violated the rule against perpetuities in one respect. This because, in addition to the existing children of J. M. Nelson, Jr., provision was made therein for "such other lawful children as may hereafter be born unto the said J. M. Nelson, Jr." and their descendants. The period allowed by the rule began to run on July 15, 1931, when L. C. Nelson died and the trust became irrevocable. It was possible for a child of J. M. Nelson, Jr. to have been born after that date and for the descendants of said child to have acquired a vested interest in trust assets after the expiration of the period permitted by the rule. The fact that no such child was actually born does not change the situation. It is the possibility of such a birth, under the rule, that creates the invalidity. Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629[9].

However, we are of the opinion that the so-called "saving clause," when properly construed prevented any violation of the rule against perpetuities. "A provision will not be construed as violating the rule against perpetuities where there is a provision in the will that, if any of its provisions should become susceptible of an interpretation creating an estate of longer duration than permitted under the law, such provision should be revoked as to the period of time beyond that permitted by law." 70 C.J.S. Perpetuities § 35, p. 626. Likewise, the annotation in 91 A.L.R. 771, 772, states that "it seems clear upon principle, and is in fact well established by the decisions, that even though a will in the first instance provides for the postponement of vesting for a stated number of years, or until a stated date, no rule against perpetuities is violated if the will, as a dominant limitation, further expressly provides (or provides by inference) that the interest shall vest during or at the expiration of such number of lives in being as may be validly used to designate a period of contingency or restraint." See also Tolman v. Reeve, 393 Ill. 272, 65 N.E.2d 815[13], and Potter v. Winter, Mo.Sup., 280 S.W.2d 27[5].

Plaintiff contends that the "saving clause" was not effective in preventing a violation of the rule because the phrase therein, "all of said children," included after-born children of J. M. Nelson, Jr. When so construed the clause would, of course, be

ineffective in preventing a violation of the rule. Such was the view of the trial court.

■ For convenience, we again set out the clause under consideration. It reads: "The trust hereby created shall in no event continue for a period longer than the lives of all of said children of said J. M. Nelson, Jr., and the survivor of all of them, and twenty-one (21) years thereafter, at the end of which time distribution shall be made in the manner herein provided, irrespective of any other provision of this agreement." In a memorandum opinion the trial court stated, in referring to said clause, that "the language used by the testator [settlor] is clear and unambiguous; therefore, it needs no construction." We do not agree. While the provision under consideration can be construed so as to include after-born children of J. M. Nelson, Jr., it is also fairly susceptible of the construction that it referred only to his named or existing children. It could well be argued that if the settlor had intended that said provision apply to after-born as well as existing children he would have used the word "the" instead of "said." According to Webster's New International Dictionary, second edition, "said" means "before-mentioned." The only children that had been specifically mentioned, i. e., named, were the then existing children of J. M. Nelson, Jr.

■ In determining the meaning of the paragraph in question the paramount rule of construction is that the settlor's intent shall govern, unless contrary to some positive rule of law, and that intention must be ascertained primarily from the instrument as a whole. The very terms of the "saving clause" indicate beyond any question of doubt that its purpose was to prevent an unintentional violation of the rule against perpetuities. Since the settlor inserted the paragraph in question for the purpose of preventing a violation of the rule, and since the phrase "all of said children" is susceptible of a construction which would accomplish that intended purpose, it seems reasonable to conclude that in using said phrase the settlor intended that "said children" should refer to named or existing children because that meaning is consistent with his general intent or purpose in placing the clause in the instrument. His fixed intent not to violate the rule against perpetuities is also shown by the fact that he placed a similar "saving clause" (in which he named his existing grandchildren) in his will.

■ There is another applicable rule of construction. We have said that if a "will is susceptible of two 'possible' constructions, one of which would render it void under the rule against perpetuities, whereas the other would permit it to stand, the latter construction should be adopted." St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 349. That rule is also applicable in the construction of an instrument creating an inter vivos trust. Davis v. Rossi, 326 Mo. 911, 34 S.W.2d 8[13]. The following authorities have either stated or followed the rule: Restatement, Property, § 375, p. 2197; VI American Law of Property, § 24.45, p. 118; 70 C.J.S. Perpetuities § 36, p. 626; Carter v. Boone County Trust Co., 338 Mo. 629, 92 S.W.2d 647; Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135; St. Louis Union Trust Co. v. Bassett, 337 Mo. 604, 85 S.W.2d 569, 101 A.L.R. 1266; Bridgeport-City Trust Co. v. Alling, 125 Conn. 599, 7 A.2d 833. There are certainly two constructions that may be placed upon the clause under consideration and therefore an application of the quoted rule would seem to indicate that we should adopt the construction which would cause the trust instrument to be ruled valid.

Since our construction of the "saving clause" is such as would effectively cause it to prevent a violation of the rule against perpetuities, we accordingly rule that the trusts in question are not invalid as being in violation of that rule.

■ All of the appellant-defendants (except plaintiff's son, Henry G. Nelson)

further contend that the trial court erred in holding that plaintiff was entitled to "an allowance for reasonable attorney's fees and for his costs expended herein" to be paid out of the trust assets. It is well settled that where the purpose of a suit is to destroy the trust estate the person instituting the same is not entitled to an allowance for attorney fees. Thomson v. Union National Bank in Kansas City, Mo.Sup., 291 S.W.2d 178; Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104; Lang v. Taussig, Mo.App., 194 S.W.2d 743. Plaintiff in his brief seeks to avoid the application of that rule by asserting: (1) Plaintiff's primary object was to enrich the testamentary trust, and (2) even if plaintiff were not ultimately to prevail on the issue of the violation of the rule against perpetuities the trust instrument needed construction because of the ambiguities which exist in the instrument with respect to the ultimate remainders. A finding that the trust did not violate the rule against perpetuities would have required a determination of whether the remaindermen consisted of the descendants or the heirs at law of the grantor's grandchildren." Those contentions are ruled against plaintiff. It is obvious that his primary purpose in this litigation was to destroy the trusts created by the inter vivos trust indenture and to immediately receive for himself such funds as would be distributed under the provisions of the L. C. Nelson will. The fact that one fourth of the trust assets would be retained in the testamentary trust during the life of Virginia Dines Nelson was merely an incidental result which plaintiff could not avoid. The further contention stated in (2) above is devoid of merit for the reason (among others) that no such alternative relief was sought in plaintiff's petition. As indicated, we rule that plaintiff will not be entitled to an allowance out of trust assets for attorney fees and costs expended.

We will now consider plaintiff's appeal. He first contends that the trustees are not entitled to an allowance for attorney fees because they represented conflicting interests in the litigation. That contention arises from the fact that the trustees were made parties as trustees of the testamentary trust as well as trustees of the inter vivos trust. In their answer, as trustees for each trust, they asserted the validity of the inter vivos trusts. Plaintiff concedes their good faith in taking that position and further concedes that they acted properly as trustees of the 1924 trust in attempting to uphold its validity. He asserts, however, that the testamentary trust would be enriched by the destruction of the 1924 trust and hence the trustees rendered the testamentary trust a disservice by seeking to uphold the 1924 trust. He says the trustees should have resigned as trustees of one of the trusts and thus have avoided representing conflicting interests.

The trustees, on the other hand, point out that as trustees under the will they were, at the most, merely nominal parties and that the brunt of the defense of the 1924 trust rested upon the trustees of that trust and the other defendants who sought to uphold its validity. They also call attention to the fact that they were seeking to uphold the obvious intent of the settlor-testator and were supported in that action by every beneficiary of each trust except plaintiff. They further contend that they owed no duty to the testamentary trust to seek destruction of the 1924 trust because if it were destroyed the assets would be first paid to the executor of the L. C. Nelson estate and that they would have no duty in regard thereto until the assets were subsequently delivered to them as trustees of the testamentary trust.

Since we have held that the inter vivos trust agreement is valid the situation relating to plaintiff's appeal is considerably different than it would have been if we had ruled otherwise, and, we are accordingly not required to decide a number of the questions raised by the parties. The trial court, after ruling the trusts invalid, stated that the trustees held the inter vivos

trust assets as trustees of the testamentary trust. That latter conclusion (the correctness of which we do not decide) afforded a basis for plaintiff's contention that any allowance for attorney fees must come from the testamentary trust assets.

In view of our conclusion that the inter vivos trusts are valid and that the assets will remain in the hands of the trustees thereof, our conclusion relating to the propriety of allowances to the trustees is as follows: (1) The trustees of the inter vivos trusts concededly had a duty to defend plaintiff's action which sought to destroy those trusts, (2) they employed counsel who performed that duty skilfully and energetically, (3) they are clearly entitled to a reasonable allowance, payable out of the total assets of those trusts, for counsel fees and other expenses incurred in performing that duty, (4) the only allowance requested by the trustees in their pleading was from the assets of the inter vivos trusts, and (5) since there was no request for an allowance as trustees of the testamentary trust we need not determine the hypothetical question as to whether they forfeited their right to an allowance from that trust by reason of their alleged failure to properly assert the interests of that trust estate in the instant action. There is obviously no merit in plaintiff's contention that the trustees are not entitled to an allowance because they each employed separate counsel. They jointly defended the action and each are entitled to an allowance for expenses incurred in that regard.

Plaintiff also contends that the other defendants (except the guardian ad litem for Henry G. Nelson) are not entitled to an allowance for attorney fees. He concedes that they would ordinarily be entitled to such an allowance but contends that in this instance the allowance should have been denied because those defendants were represented by the same firm of attorneys as represented the Mercantile Trust Company, one of the trustees. The argument in support of that contention seems to be based upon the assumption that said trustee would be denied an allowance for attorney fees for reasons heretofore asserted by plaintiff and that said ruling would, for all practical purposes, be effectively circumvented if the attorneys for that trustee are paid for their services in defending this action by an allowance, from the trust assets, to other defendants that said firm represented. The foundation for that argument would seem to have been destroyed by our ruling that the trustee in question is entitled to an allowance for that purpose. The reason for plaintiff's position no longer exists. Moreover, it should be noted that in this type of case attorney fees and expenses are allowed to the litigant and not to the lawyers. Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104. It is reasonable to assume that these defendants have paid or obligated themselves to pay their attorneys for services rendered to them in this action and no valid reason has been suggested as to why they should not be reimbursed out of the trust assets by a reasonable allowance for that purpose. We accordingly rule that they are entitled to such allowances.

Upon plaintiff's appeal the judgment is affirmed. Upon the appeal of defendants, the judgment is reversed and cause remanded with directions to the trial court to set aside the judgment entered and to enter a new judgment in accordance with the views herein expressed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.